## LOMA VISTA DEVELOPMENT CO. v. JOHNSON et ux.

### No. 11349.

Court of Civil Appeals of Texas. San Antonio.

Dec. 15, 1943.

Rehearing Denied Jan. 26, 1944.

Johnson & Rogers and Nat L. Hardy, all of San Antonio, for appellant.

Elmer Ware Stahl and A. R. Sohn, both of San Antonio, for appellees.

SMITH, Chief Justice.

This suit was brought by Thomas W. Johnson and wife, Dorothy, against appellant, Loma Vista Development Company, a corporation. Appellees had purchased a new dwelling house from appellant at the agreed price of $4,500. Appellees claimed that they were induced to pay that price for the house by reason of false representations as to its value and qualities made by one Roy E. Jones, alleged to be an agent of appellant thereunto duly authorized; that the house was in fact defective in construction and by reason of such defects its actual and reasonable value was only about $2,500, whereby appellees were actually damaged at least $2,000, for which they prayed judgment. On a jury trial appellees recovered judgment against appellant for $1,500 actual damages. Appellees prayed for exemplary damages, but that claim was eliminated from the case.

Appellant verbally listed the property generally with W. P. McNeeley Company, a local real estate concern, and particularly and directly with Roy E. Jones, McNeeley's sole salesman, to whom appellant gave the exclusive agency for a limited period during which he procured the sale to appellees at the listed price of $4,500. In listing the property with Jones appellant placed no specific restrictions upon his authority to bind appellant, nor was he given express authority to make representations to prospects in behalf of appellant concerning the construction of or quality of materials in the property. The nature and extent of Jones' authority must be implied from the facts and circumstances of the transaction.

The house in question was new, had never been occupied, and in fact its construction was still incomplete in some minor details.

In pursuance of his exclusive agency, and with appellant's knowledge and acquiescence, Jones took possession of the premises and opened the house for inspection of prospects, who were invited to enter by placards, "Open for Inspection," posted in the yard. Attracted by the placard appellees, passing, stopped their car and entered the yard. Jones, already on the premises, greeted them, showed them through the house and over the premises, making the usual sales talk concerning the beauties and advantages of the property. Among other statements, according to jury findings, Jones also made the following representations to appellees, which statements the jury also found to be statements of material facts, and false:

1. That the foundation under the house would give plaintiffs "no trouble and would stand up, and that it was the best foundation for that particular type of house."

2. That he represented to plaintiffs that they "would have no trouble with the fireplace because it was built by an expert" and

3. That "the house and lot at 212 Sunset Road was worth $4500.00."

The jury also found that said representations were believed and relied on by appellees, and induced them to purchase the property.

■ We conclude that Jones' statement that, if they purchased, appellees would "have no trouble with the fireplace" was not actionable. Jones made no pretense that he had any personal knowledge of the quality of the fireplace, and appellees were bound to have known or assumed in the circumstances that he had no such knowledge, for he coupled the statement with the qualification that he based it upon the further fact that the fireplace was built by an expert, a fact not questioned in the record. At most the statement was of an opinion coupled with a statement of the fact upon which he based the opinion, the basic fact being unrefuted in the record.

■ Jones' statement that the property was "worth $4500" was purely and obviously but an opinion. That opinion was adduced in this way: Appellees asked Jones if he thought the place was "worth $4500," to which he replied, "I think it is." This opinion, elicited by appellees themselves, was clearly not actionable.

■ But we are of the further opinion that the evidence was sufficient to support the jury finding that Jones' statement that the foundation of the house would give appellees "no trouble" and would "stand up," and was the "best foundation for that particular type of house," was a representation of fact. Some time after appellees purchased and moved into the house they discovered that the foundation was faultily constructed or adjusted. When appellees complained and called appellant's attention to the condition appellant's contractor at appellant's instance attempted to correct the defects, without results, so that in the course of time it developed that the foundation, instead of being as represented by Jones, had become but a poor makeshift of a foundation, radiating damaging, unsightly and unsafe cracks, sags and buckles throughout the structure. We conclude that Jones' representations as to the foundation of the house proved to be legally false, and being material were actionable. We overrule appellant's fifth point.

■ Appellant contends in its first point that the uncontradicted evidence showed that Jones was neither its agent, servant or employee in effecting the sale of the property to appellees. The record shows, conclusively, that the property was listed exclusively with Jones, with the authority and duty to procure a purchaser at the stipulated price of $4,500; that with appellant's knowledge and acquiescence Jones took possession of the premises and held the house open for the inspection of prospective purchasers; that under this authority he showed the premises to appellees with the purpose of effecting a sale to them; that he negotiated with appellees during a period of several days, and with appellant's knowledge and advice arranged the matter of terms with appellees; that in appellant's behalf he prepared and procured appellees' signature to an "earnest money" contract for the sale, and that appellant approved and executed this agreement in the form prepared by Jones as the procuring agent; that subsequently and in confirmation of that agreement appellant executed and delivered a deed conveying the property to appellees, and accepted and retained the purchase money from appellees. We conclude as a matter of law that these undisputed facts and circumstances constituted Jones such an agent of appellant as to authorize him to bind appellant in such matters as came within the scope of that particular character of agency. By offering the house for sale as a new and complete structure appellant impliedly warranted that it was properly constructed and of good material and specifically that it had a good foundation, and it was well within the scope of Jones' agency to represent to appellees or any other purchaser that the property had such a foundation. 7 Tex.Jur. p. 395, § 13; Reed v. Hester, Tex.Com.App., 44 S. W.2d 1107; Wimple v. Patterson, Tex. Civ.App., 117 S.W. 1034; Martin v. Ince, Tex.Civ.App., 148 S.W. 1178; Sargent v. Barnes, Tex.Civ.App., 159 S.W. 366. We therefore overrule appellant's first point, and, for like reasons, its second point.

▇ In its fourth point appellant asserts, in effect, that appellees failed to prove any legal measure of damages. We are obliged to sustain the contention. Appellees grounded their cause of action upon allegations that "if said property purchased from the Defendant had been as represented, it would have been reasonably worth the sum of $4,500.00; that in fact said property was fraudulently misrepresented to the Plaintiffs as above alleged, and was, at the time of its said sale to the Plaintiffs, only actually and reasonably worth about $2,500.00; that Plaintiffs were thereby damaged to the extent of at least $2,000.00, and which sum of money is here alleged to be their actual damages; * * *." This represents the measure of damages provided for in Art. 4004, R.S. 1925, upon the terms of which appellees apparently based their cause of action. However, appellees failed to prove the elements therein provided for, or set up in their petition. There was no evidence of the value of the property at the time of its purchase, or its value as represented by Jones. The only proof of value at any time or in any condition was contained in the testimony of a single value witness, to the effect that had the subsequently developed defects been anticipated at the time appellees purchased the house its then market value would in his opinion have been $3,000. In short, there was no evidence of the actual value of the property at the time of its purchase, or its actual value had it measured up to Jones' representations.

The question of ratification by appellant is raised by appellees, and appellant in turn urges that upon being apprised of Jones' representations and their falsity it offered to make restitution to appellees of the amount of their loss and accept a reconveyance of the property. We doubt if these matters may be raised by the parties under their trial pleadings, but need not so decide here in view of another trial and probable amended pleadings, nor need we discuss the sufficiency of the evidence to support those contentions.

Because there was no evidence establishing a legal measure of damages in the case, the judgment will be reversed and the cause remanded for a new trial for all purposes.

Reversed and remanded.

MURRAY, Justice (dissenting).

I find myself unable to concur in the opinion of the majority. There is much said in the majority opinion as to the relation between Roy E. Jones and the Loma Vista Development Company. The uncontroverted evidence shows that Roy E. Jones was not an employee of the Loma Vista Development Company but of the William P. McNeeley Company; that the development company listed the property at 212 Sunset Road with the McNeeley Company upon a 5% commission basis and that Roy E. Jones was a salesman for the McNeeley Company and received a commission of 2½% for each sale he made. Jones introduced himself to the Johnsons as a salesman and as a real estate man. The Johnsons do not contend that they understood otherwise. Jones only had authority to find a purchaser and had no authority to convey the property. He could only enter into an earnest money contract of purchase with the approval of the development company. In other words, the record shows that at most Jones was a real estate broker with authority to find a purchaser for the property at 212 Sunset Road, at the stipulated price of $4,500, with no authority to convey the property, and only with authority to enter into an earnest money contract with a purchaser subject to the approval of the development company. An exclusive listing was given for a few days to enable Jones to close his deal with the Johnsons. At the very most Jones was a real estate broker with authority to sell the property, but with no authority to convey the same. The finding of the jury that Jones was an agent of the Loma Vista Development Company adds nothing to, nor takes anything away from this undisputed situation for, after all, a real estate salesman is an agent of the landowner, but not a general agent. He is only a special agent with limited authority. Donigan v. Policek, Tex.Civ. App., 34 S.W.2d 375.

The jury found that Jones made the three representations set forth in the majority opinion. The majority concluded that the last two representations were mere expressions of opinion and would not support appellees' suit for fraud and deceit. I conclude that the third representation is in the same category. This finding was that Jones represented to the Johnsons that the foundation under the

house would give plaintiffs "no trouble and would stand up, and that it was the best foundation for that particular type of house." The statements that the foundation would give no trouble and would stand up are clearly not statements of existing facts, but mere opinions as to what was going to happen in the future. Such statements are trade talk pure and simple. The statement that the foundation was the best foundation for that particular type of house was evidently based upon the following testimony: Jones testified that he told the Johnsons "that the studs in the house were set sixteen inches on center, that they were storm braced, double flooring, and the floor joists were sixteen inches on center. I told him that the foundation of the house—he asked about the foundation and I told him the foundation of the house was put down at a certain depth and belled out at the bottom and was set six feet eight inches center to center." The Johnsons did not deny that they were so told, but only added that he stated further that the foundation consisted of re-enforced concrete pillars. There is no contention that this was not the type and character of the foundation under the house. Mr. Johnson testified that Jones went further and said: "And he explained that it had a concrete foundation, on concrete blocks, which was the best type of foundation for that particular type of house." Mrs. Johnson testified as follows:

"A. I don't know much about foundations. I only knew what he said it was, that it was the best kind of a foundation for that kind of house.

"Q. The best kind of foundation for that kind of house, that is what he said? A. Yes, that is right."

Thus it is seen that what Jones was talking about was that the type of foundation being the best type of foundation for this particular type of house. There is no evidence in the record that this type of foundation, that is, concrete pillars belled out at the bottom, is not the best type of foundation for this type of house, when everything is considered. There might be difference of opinion as to what type of foundation is in fact the best type of foundation for a particular type of house, but for a real estate broker to express his opinion as to the best type of foundation for a particular type of house is not such a misrepresentation of a fact

as will support an action for fraud and deceit under the provisions of Art. 4004, Vernon's Ann.Civ.St.

What was said by Mr. Justice Smith, speaking for this Court in Bertram v. Reed Automobile Co., 49 S.W.2d 517, 518, might well be repeated here. I quote: "We have concluded that the trial court properly directed a verdict against appellant, upon several grounds. First, the representations made by appellee's agent in making the sale to appellant, as set out above, are not such as will support a charge of fraud in a transaction of this sort. Common experience and observation cause one to marvel at the moderation of the selling agent in making his trade talk to appellant. For an automobile selling agent to describe his offering merely as a 'dandy,' a 'bear-cat,' a 'good little car,' a 'good automobile,' or even a 'sweet job,' is nothing. Those are relative terms, they may mean anything the orator or the listener wants, and neither may be penalized if the one exaggerates or the other is disappointed."

The test to be applied in determining whether a statement is one of fact or a mere expression of opinion is stated as follows, in 1 Black on Rescission and Cancellation, Section 77: "If the representation is as to a matter not equally open to both parties it may be said to be a statement of fact as such; but if it is as to a matter that rests merely in the judgment of the person making it, and the means of deriving information upon which a fair judgment can be predicated are equally open to both parties, and there is no artifice or fraud used to prevent the person to be affected thereby from making an examination and forming a judgment in reference to the matter for himself, the representation is a mere expression of opinion."

The record shows that Jones and Johnson had an equal opportunity to know about the foundation of the house. No artifice or fraud was practiced by Jones to prevent an investigation by the Johnsons. Johnson went so far as to look under the house through the trap door. Jones told Johnson that the contractor who built the house was named Guyon and that Thrift Lumber Company furnished the material for the house. Jones was known to the Johnsons only as a salesman, a real estate man. Johnson was himself a salesman for

the telephone company. The Johnsons talked to a Mr. Brenner, who was sales manager for the Thrift Lumber Company, but they said Brenner talked in technical terms and they did not understand.

Appellees' testimony as to the defective condition of the foundation consists largely of mere photographs of the same. These defects could have been discovered by simply taking a look at the foundation. All of the defects are obvious. Johnson's excuse for not looking is that it was dark under the house. This difficulty could have been overcome by the use of a flashlight or some other kind of light. What was said by the Supreme Court of Washington in Washington Cent. Improvement Co. v. Newlands, 11 Wash. 212, 39 P. 366, 367, might well be repeated here. I quote: "So far as the allegations of the complaint are concerned, there is nothing to show that the land was not at hand when this contract was made, and that it could not, by the use of ordinary prudence, have been investigated by the purchaser; and in cases of this kind it seems to us that parties must exercise ordinary business sense and the faculties which are given to them for the purpose of transacting business, and that they cannot call upon the law to stand in loco parentis to them in the ordinary transactions of business and their ordinary dealings with their fellow men. One of the allegations of this answer is that plaintiff represented to defendant that this building was already in process of erection; that the work was already under way. The ascertainment of this fact was easy, and there is no circumstance alleged to show that there was any scheme worked upon this purchaser to prevent him from making this examination, or anything of that kind. The other fact alleged to have been represented, that a contract had been let for the completion of this hotel, was also easily ascertainable. If people, having eyes, refuse to open them and look, and, having understanding, refuse to exercise it, they must not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

If by any stretch of the imagination this statement, "that this foundation was the best foundation for this particular type of house," can be said to be a statement of fact upon which the Johnsons had a right to rely and to recover for fraud and de-

ceit if it should prove false, then, and in such event, it is my opinion that Jones, as a real estate broker and salesman, did not have any authority to make the statement and his action in doing so has not been ratified by the Development Company in any way. The Johnsons plead ratification in the following language, to-wit: "That although defendant through its president and officers, was informed of the condition of the house, it failed and refused to repair and make said house sound, but insisted on knowingly taking and keeping the advantage and benefit of the fraud and misrepresentation of its said agent."

The evidence shows conclusively that Jones did not have any actual authority to make any representation as to the construction or durability of the foundation. It further shows that while the Johnsons did notify the officers of the Development Company that the house had sagged and buckled and cracked, they made no mention of the false representation by Jones for about a year and a half, and the first knowledge the officers of the Development Company had concerning any alleged false representations was when the suit was filed, at which time they offered rescission and restitution, which was refused by the Johnsons.

Neither do I think Jones had any implied authority to make such representations. In Lay v. Midland Farms Co., Tex. Civ.App., 8 S.W.2d 230, 235, it was held: "The rule seems to be settled that an agent with restricted power to sell has no power to bind the principal by any representation as to the quality of the land. 2 C.J. p. 616 * * *." A writ of error was refused by the Supreme Court of this State, and, so far as I am able to determine, that is still the law.

I am aware of the fact that 7 Tex.Jur. p. 395, § 13, states "misrepresentations by a broker relating to the land that he is employed to sell are imputable to the principal, regardless of the terms of the broker's special authority, and the principal's lack of knowledge that misrepresentations have been made," and cites in support of this text Kleine Bros. v. Gidcomb, Tex.Civ.App., 152 S.W. 462; Martin v. Ince, Tex.Civ.App., 148 S.W. 1178; Farris v. Gilder, Tex.Civ.App., 115 S.W. 645. In the Kleine case, Gidcomb was suing Kleine Bros. only for the money he had been defrauded out of and when the Kleine Brothers attempted to retain the fruits of the fraud they thereby ratified

the acts of their agent who had committed the fraud. In the Martin-Ince case, Martin was suing Ince upon the notes which he had received in the fraudulent transaction and, of course, so long as Martin was insisting that his notes be paid he was ratifying the fraudulent acts of his agent. In the Farris-Gilder case, Farris sued Gilder for acreage shortage in a land deal. Gilder's broker misrepresented the number of acres in the tract to Farris. Gilder retained the benefits of the fraud and thereby ratified the acts of his agent and, furthermore, a real estate broker is supposed to know the location of the land and its boundaries, and where the sale is made on an acreage basis he is probably supposed to know the number of acres he is selling; so, therefore, the representation of the agent as to the number of acres is probably binding upon the vendor. Certainly the Farris-Gilder case goes no further than to so hold.

It seems that here appellees rely very largely upon the case of Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107. There are at least two distinguishing features in that case, to-wit: Hester was the holder of five vendor's lien notes he had received as a result of the fraud, and was insisting upon his right to collect these notes, thus ratifying the fraud of his agents, and, secondly, the agents only showed Reed a part of the land and concealed from him the seeped and water-logged condition of the land.

I have examined a great number of cases, but have been unable to find a single case holding that the vendor was liable for the unauthorized misrepresentation of a real estate broker, unless there were elements of ratification in the case, and I do not believe that one can be found in Texas.

An excellent discussion of the question here involved is found in Light v. Chandler Improvement Co., 33 Ariz. 101, 261 P. 969, 57 A.L.R. 107. There it is pointed out that it would be a dangerous rule of law which would permit a vendee to hold a vendor in an action for fraud and deceit for the misrepresentations of an ordinary real estate broker with whom the vendor had merely listed his land for sale in the absence of ratification or estoppel. If such a rule did exist it would be a hazardous thing for the owner of real property to list his property with a real estate broker. He might be called upon to pay out huge sums of money far in excess of the value of his land because of some misrepresentation of such broker, which statement he did not authorize or know anything about, and this in spite of the fact that when he was informed of such fraud he was willing to rescind and make full restitution.

For the reasons above stated, I respectfully dissent to the opinion of the majority, it being my opinion that judgment should be here rendered in favor of appellant.