Robert C. JONES, Plaintiff in Error,

v.

Lester B. GATEWOOD and Medrith N. Gatewood, Defendants in Error.

No. 40007.

Supreme Court of Oklahoma.

April 16, 1963.

Wheeler, Parsons & Wheeler, Oklahoma City, for plaintiff in error.

Cantrell, Douglass, Thompson & Wilson, by Lee B. Thompson, Oklahoma City, for defendants in error.

HALLEY, Vice Chief Justice.

In January, 1958, Lester B. Gatewood and Medrith N. Gatewood, husband and wife, hereafter called plaintiffs, began negotia-

tions with Robert C. Jones, hereafter called defendant, for the purchase of a lot and a house being built thereon in Oklahoma City. On February 3, 1958, plaintiffs and defendant entered into a written contract, which contained no express warranties, for plaintiffs to purchase the property. Thereafter, in March, 1958, the construction was completed and plaintiffs took possession.

After plaintiffs had been in possession for a few months, they noticed water damage to the floor coverings of the house. There were some other small items of damage which were not seriously disputed.

Plaintiffs brought an action for damages against defendant on the theory of breach of two implied warranties, one the warranty of fitness and the other the warranty that the house was constructed in a good and workmanlike manner. Jury was waived and the matter was tried by the court. Judgment was entered for the plaintiffs in the sum of $2,889.43. Defendant's motion for new trial was overruled and he appeals.

Plaintiffs called an architect as an expert witness on the cause of damage to the floors of the house and on how it could be corrected. The house was built on a concrete slab floor. The witness stated that such a house should have under it a water proof membrane to prevent water from being drawn by capillary attraction to the underside of the concrete and then through the slab. He stated that if a membrane was provided, it had been punctured and was therefore no better than if one had never been provided. He recommended reducing the water pressure under the slab by installing sub-surface drainage around the perimeter of the house.

■ Defendant in his brief states that the house was completed at the time of sale in February, 1958, except for installing certain accessories. The record does not bear this out. One of plaintiffs testified that the concrete floor was in and the walls were up and the roof on, but that the house was only 75 to 80% complete. He testified that the waterproofing had not yet been·

placed on the concrete. The defendant in his testimony disputed this, but he admitted that the house "was not quite completed" when it was sold. We believe there was sufficient evidence for the trial court to find that the house was in the course of construction, that the faulty workmanship and defects were latent and undiscoverable by reasonable inspection, and that upon completion the house was not reasonably fit for occupancy.

■■ As defendant states in his brief, there was only one real issue raised in the trial below and upon appeal here. That issue is whether there was an implied warranty, under the purchase contract in this case, that the defendant would construct the house in a good and workmanlike manner and reasonably fit for occupancy as a place of abode.

This appears to be a question of first impression in this jurisdiction, although it has been brought before some of the courts of our sister states.

In Hoye v. Century Builders, Inc., 52 Wash.2d 830, 329 P.2d 474, wherein Hoye agreed to purchase a lot from Century Builders and the latter agreed to construct a house thereon, the Supreme Court of Washington held that under the circumstances there was an implied warranty that the completed house would be fit for human habitation and that the uniform current of decisional law was in accord. The court then said:

"* * * The reason is nowhere better explained than by the King's Bench division in Miller v. Cannon Hill Estates, Ltd. (1931), 2 K.B. 113, in the following passage from the opinion in that case:

"'* * * The position is quite different when you contract with a builder or with the owners of a building estate in course of development that they shall build a house for you or that you shall buy a house which is then in the course of erection by them. There the whole object, as both parties

know, is that there shall be erected a house in which the intended purchaser shall come to live. It is the very nature and essence of the transaction between the parties that he will have a house put up there which is fit for him to come into as a dwelling-house. It is plain that in those circumstances there is an implication of law that the house shall be reasonably fit for the purpose for which it is required, that is for human dwelling. * * *'"

The case of Vanderschrier v. Aaron, 103 Ohio App. 340, 140 N.E.2d 819, had the same question involved as is before us in the instant case. It is said therein:

"In the law of England, we find the rule to be that, upon the sale of a house in the course of erection, there is an implied warranty that the house will be finished in a workmanlike manner. Perry v. Sharon Development Co., Ltd., 4 All. E.L.R. (1937) 390.

"In this country, we have found but few cases bearing on the question. We have found none in this state directly touching it. See cases cited in 'Right of Purchaser in Sale of Defective House,' 4 Western Reserve Law Rev. 357.

"In establishing the law for this case, we adopt the law pronounced in the English case cited supra. We believe it to be salutary and based upon sound legal reasoning."

We are of the belief that the above stated reasoning is valid and applicable herein. We approve the rule announced in the cited cases. For the reasons above set forth, we hold that the trial court committed no error in determining that plaintiffs were entitled to recover damages against defendant on the theory of implied warranty.

Affirmed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

JACKSON, J., concurs in result.