No. 04-99-00337-CV



Michael M. BUECHER, et al.,


Appellants



v.



CENTEX HOMES, a Nevada Partnership, 


and Centex Real Estate Corporation d/b/a Centex Homes,


Appellees



From the 224th Judicial District Court, Bexar County, Texas


Trial Court No. 97-CI-12270


Honorable Carol R. Haberman, Judge Presiding



ON APPELLEE'S MOTION FOR REHEARING AND 


APPELLEE'S MOTION FOR EN BANC REHEARING



Opinion by: Phil Hardberger, Chief Justice

Concurring Opinion by: Paul W. Green, Justice

Dissenting Opinion by: Sarah B. Duncan, Justice (joined by Justice Karen Angelini)


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Alma L. López, Justice

 Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

 

Delivered and Filed: March 31, 2000


APPELLEE'S MOTION FOR REHEARING DENIED; APPELLEE'S MOTION FOR EN BANC
REHEARING GRANTED; REVERSED AND REMANDED


 Can a builder cause a homeowner to waive the implied warranty of habitability and good and
workmanlike construction by getting the homeowner to sign a contract of adhesion? We hold he
cannot. In so holding, we affirm our belief in the continued viability of Melody Home Mfg. Co. v.
Barnes, 741 S.W.2d 349 (Tex. 1987). Melody Home held that the implied warranty to perform repair
services in a good and workmanlike manner cannot be waived.

 It would be incongruous if public policy required the creation of an implied warranty,
yet allowed the warranty to be disclaimed and its protection eliminated merely by a
pre-printed standard form disclaimer or an unintelligible merger clause.


Melody Home, 741 S.W.2d at 355.

 The homebuilder in this case argues that the anti-waiver language in Melody Home only
applies to the implied warranty relating to the repair of tangible personal property, and not the implied
warranty relating to the construction of new homes. We disagree. The services in question in
Melody Home were repairs to a modular home. But the rational of giving the consumer certain basic
protections in this most important of possessions is the same. The burden on the homebuilder is not
great: only that the home be built in a workmanlike manner and be fit for human habitation. It is a
minimal standard, but it cannot be contracted away by requiring the homeowner to sign a contract
in which the homeowner is in an inferior bargaining position. This case is a good example. The
homebuilder stated, in writing, it would not sell the home to the buyer unless the buyer agreed to give
up his rights to the implied warranties of good and workmanlike construction and habitability. Why
should a home buyer be forced to make such a Hobson's choice? He shouldn't.

Factual and Procedural History


 The standard form sales agreement of the homebuilder in this case, Centex Homes and Centex
Real Estate Corporation d/b/a Centex Homes ("Centex), contains a provision that waives the implied
warranties of good and workmanlike construction and habitability with regard to new homes. The
waiver provision states: 

 "PURCHASER AGREES TO ACCEPT SAID HOMEOWNER'S WARRANTY AT
CLOSING IN LIEU OF ALL OTHER WARRANTIES, WHATSOEVER,
WHETHER EXPRESSED OR IMPLIED BY LAW, AND INCLUDING BUT NOT
LIMITED TO THE IMPLIED WARRANTIES OF GOOD WORKMANLIKE
CONSTRUCTION AND HABITABILITY. PURCHASER ACKNOWLEDGES
AND AGREES THAT SELLER IS RELYING ON THIS WAIVER AND WOULD
NOT SELL THE PROPERTY TO PURCHASER WITHOUT THIS WAIVER. 


In place of the implied warranties, Centex agrees to deliver its standard form Limited Home Warranty
against defects in workmanship and materials, a copy of which is made available to the homeowner.

 The Homeowners allege, as part of a class action, that the waiver provision violates section
17.46(b)(12) of the DTPA. The Homeowners sought an injunction that would prevent Centex from
asserting that the implied warranties had been waived, from relying on the waiver in disclaiming
responsibility to homeowners, and a declaration that the waiver provision is unenforceable. Centex
filed special exceptions, asserting that the Homeowners' allegations were contrary to existing law and
further contending that it would be manifestly unjust to permit the Homeowners to proceed with a
class action based solely on an argument for changing existing law. The trial court granted the special
exceptions, striking the allegations relating to the unenforceability of the waiver provision, and
dismissing the claims based thereon. The trial court severed the dismissed claims, and the
Homeowners timely appealed.

Standard of Review


 A special exception is the proper method to determine whether the plaintiff has pled a cause
of action. Albright v. Texas Dept. of Human Services, 859 S.W.2d 575, 582 (Tex. App.--Houston
[1st Dist.] 1993, no writ). When a trial court dismisses a case upon special exceptions for failure to
state a cause of action, the appellate court's review of this legal question is de novo. Nichols v. Jack
Eckerd Corp., 908 S.W.2d 5, 7 (Tex. App.--Houston [1st Dist.] 1995, no writ); Fernandez v. City
of El Paso, 876 S.W.2d 370, 372 (Tex. App.--El Paso 1993, writ denied). The appellate court is
required to accept as true all factual allegations in the pleading. Nichols, 908 S.W.2d at 7;
Fernandez, 876 S.W.2d at 372.

Discussion


 In Humber v. Morton, 426 S.W.2d 554, 554 (Tex. 1968), the widow Humber brought suit
against a builder-vendor, alleging that the new home she purchased was not suitable for human
habitation because an improperly constructed fireplace and chimney caused the house to catch fire.
The lower courts held that the builder-vendor was not liable to Humber because the doctrine of
caveat emptor applied to the sale of a new house by a builder-vendor, and consequently no implied
warranty that the house was fit for human habitation arose from the sale. Id. at 555. After reviewing
the trend against the application of the doctrine of caveat emptor both in Texas and other state court
decisions, the Texas Supreme Court asserted:

 The caveat emptor rule as applied to new houses is an anachronism patently out of
harmony with modern home buying practices. It does a disservice not only to the
ordinary prudent purchaser but to the industry itself by lending encouragement to the
unscrupulous, fly-by-night operator and purveyor of shoddy work.


Id. at 562. The court held that a builder-vendor impliedly warrants that a new home that he builds
and sells is constructed in a good workmanlike manner and is suitable for human habitation. Id.

 In G-W-L, Inc. v. Robichaux, 643 S.W.2d 392, 393 (Tex. 1982), the Texas Supreme Court
was presented with the question of what is sufficient to exclude the implied warranty of fitness
created in Humber. Both parties agreed in G-W-L that the implied warranty could be waived by
proper language. Id. The court held that the language waiving the implied warranty must be "clear
and free from doubt." Id. The disclaimer language in G-W-L stated that there were no warranties,
express or implied, in addition to those set forth in the listed documents. Id. The court reasoned that
the parties to a contract have an obligation to protect themselves by reading what they sign, and the
disclaimer language met the standard necessary to exclude the Humber warranty. Id.

 The permissible waiver of implied warranties was revisited by the Texas Supreme Court five
years later in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d at 355. In Melody Home, the court
first considered whether the protection of Texas consumers required the adoption of an implied
warranty that repair services of existing tangible goods or property would be performed in a good
and workmanlike manner. Id. at 353. After examining the policies favoring the adoption of such an
implied warranty, the court held that an implied warranty to repair or modify existing tangible goods
or property in a good and workmanlike manner is available to consumers suing under the DTPA. Id.
at 354. The court next considered whether the implied warranty could be waived and held that public
policy precluded such a waiver by a pre-printed standard form disclaimer or an unintelligible merger
clause. 

 Centex contends that this waiver prohibition language must be read narrowly as only
prohibiting the waiver of the implied warranty with regard to repair services. Centex first notes that
the waiver with regard to new homes is permissible because the Homeowners are adequately
protected by the Residential Construction Liability Act ("RCLA"). However, the RCLA is not
designed to supplant the implied warranty. See William T. Little & Stephen Paxson, Builder Liability
of the Implied Warranties of Good Workmanship and Habitability and the Builder's Statute of
Repose, 56 Tex. B.J. 462, 462 (1993) (noting construction defect claim based upon an alleged breach
of an implied warranty will generally be brought under the provisions of the DTPA or the RCLA).
As noted in the article Centex cites in asserting its RCLA argument, "there is no clear authority as
to the legal effect of a disclaimer of such implied warranties in connection with new construction."
Id.

 Centex also argues that the waiver of implied warranties should be permitted because the
express warranties provided in lieu of the implied warranties serve the "gap-filler" function which the
implied warranties are designed to satisfy. Centex's contention rests on its premise that the
warranties are implied to fulfill this "gap-filler" function. However, the Humber court noted that the
purpose of the implied warranty was to discourage unscrupulous, fly-by-night operators and
purveyors of shoddy work. It was this same concern with regard to discouraging shoddy
workmanship that led the Melody Home court to adopt the prohibition against wavier. As the court
noted, permitting disclaimers would lead to the development of adhesion "take it or leave it"
contracts. The warranty provision in Centex's standard form contract exemplifies this concern
because it provides: "PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER IS
RELYING ON THIS WAIVER AND WOULD NOT SELL THE PROPERTY TO PURCHASER
WITHOUT THIS WAIVER."

Conclusion


 In 1968, the Texas Supreme Court adopted the implied warranty relating to new home
construction. Humber, 426 S.W.2d at 554. In 1987, the Court reasoned that the same public policy
considerations that require the creation of an implied warranty prevent the warranty from being
disclaimed and its protection limited by a pre-printed standard form disclaimer. Melody Home, 741
S.W.2d at 355. We conclude that this reasoning applies with equal force to the implied warranty
relating to new home construction. The trial court's judgment is reversed, and the cause is remanded
to the trial court for further proceedings consistent with this opnion.


 PHIL HARDBERGER, 

 CHIEF JUSTICE


PUBLISH