Stephen C. LIEBER and Ellen S. Lieber,
Plaintiffs-Respondents,

v.

Jess BRIDGES d/b/a Jess Bridges
Builder, Defendant-Appellant.

No. 12577.

Missouri Court of Appeals,
Southern District, Division One.

April 19, 1983.

Robert J. Koster, King & Koster, St. Louis, for plaintiffs-respondents.

Albert Crump, Jr., Williams, Smallwood & Crump, Rolla, for defendant-appellant.

TITUS, Judge.

In June 1974 plaintiffs contracted with defendant to erect a house on plaintiffs' lakefront property in Camden County. The house design was very close to a house which defendant had already built and which had been inspected and approved by plaintiffs. Plaintiffs were to pay defendant $35,000 in exchange for defendant furnishing all material and labor for construction.

The house was fully completed and paid for in October 1974 with no visible problems. It was built on a thirty degree slope, consisting of two stories with an elevated deck and concrete patio fronting much of it. In order to prevent the structure from "settling" defendant sunk concrete "piers" under the foundation to insure that it was upon a firm footing.

In early 1975 plaintiffs noticed that the posts supporting the elevated deck were dangling above the piers upon which they had rested. The increased pressure on the deck caused it to pull away from the house until defendant returned and placed "caps" on the piers, allowing them to once again support the deck posts. Shortly afterwards, however, plaintiffs noticed that the concrete porch had begun to separate from the house, followed, once again, by the deck. In subsequent months, plaintiffs testified, the house grew worse as cracks appeared, the porch sunk deeper, the roof listed, and the floor began to drop out of the house, along with numerous other problems. All was reported to defendant, who never responded.

Plaintiffs obtained the help of another contractor who made substantial corrections to the piers which totally corrected the settlement problem. The contractor testified, inter alia, that the piers constructed by appellant were "inadequate" in that they were not placed upon solid rock, but upon loose dirt and stone, which was in turn upon rock. It was his opinion that the problems were caused by the inadequately constructed piers and that defendant was wrong in not sinking them to solid rock. This, he said, would have prevented any settling of the house.

Plaintiffs brought suit alleging that defendant had impliedly warranted the house to be suitable for its ordinary purpose, but that it was in fact built in an unskillful and unworkmanlike manner. They prayed for a $17,000 judgment, consisting of $5,000 for diminution in value and $12,000 for repairs. The jury found for the plaintiffs under an implied warranty theory, awarding $25,000 in damages. After the trial court granted remittitur to $17,000, this appeal was filed.

We first consider defendant's second point relied on which states that the trial

court erred in refusing to accept defendant's MAI 34.02[1] withdrawal instruction to instruct the jury that all evidence concerning unskilled or unworkmanlike conduct on the part of defendant is no longer to be considered since that evidence is irrelevant in a case involving breach of an implied warranty. The issue, he asserts, is the quality of the house, not the workmanship in building it. Plaintiffs, on the other hand, suggest that such evidence is properly admitted since the jury deserves a reasonable explanation as to why the house was rendered unfit for use as a residence.

The controversy is caused by the difference between contract and tort law as to the types of damages recoverable under each. The damages recoverable under contract law relate solely to the deterioration or loss of bargain of a house, whereas negligence law allows recovery not only for loss of bargain, but also for personal injury. Therefore, the evidence relevant to proof of damages under contract law is that which deals solely with the end result, i.e. quality of the house; whereas that relevant in negligence law is both conduct of the builder and resultant quality of the house. In other words, "[f]ault is irrelevant in an action in implied warranty." *Crowder v. Vandendeale,* 564 S.W.2d 879, 882 (Mo. banc 1978). See also *Smith v. Old Warson Dev. Co.,* 479 S.W.2d 795, 798 (Mo. banc 1972).

■ The case before us admittedly involves only the deterioration of a house, and not any threat of personal injury; it thus falls under the contract oriented implied warranty theory. However, in reviewing the evidence we note that there was extensive testimony regarding how defendant built the house, what he could have done and what he should have done. Such evidence was elicited by plaintiffs' attorney from defendant, plaintiffs and the other witnesses introduced by both sides. And such evidence went beyond merely showing what caused the house to sink—it, in fact, attempted to place blame on the builder by alleging negligent conduct. Since in a case of implied warranty such testimony is irrel-

evant and possibly prejudicial, we hold that the lower court abused its discretion in failing to submit defendant's withdrawal instruction. *Helming v. Adams,* 509 S.W.2d 159, 169[14] (Mo.App.1974).

■ Defendant's first point relied on alleges that the trial court erred in its submission of a verdict director that contains neither the correct law of the case nor a "tail" referring to defendant's affirmative defense instruction. The verdict director that was used was MAI 25.08, which is patterned on the law of implied warranty of merchantability. To recover under such a warranty, the plaintiffs were required to show that the house is not fit for the ordinary purpose for which it is used. Similar submissions have been upheld under implied warranties of fitness for a particular purpose, which yield a broader scope of liability, yet involve the more difficult showing of whether the builder had knowledge of the particular purpose for which the building was to be used and whether the building in fact lived up to such a purpose. Cf. *O'Dell v. Custom Builders Corp.,* 560 S.W.2d 862 (Mo. banc 1978).

■ Defendant's criticism of the use of MAI 25.08 is that the issue litigated in this lawsuit involved not merchantability, but quality of workmanship. Therefore, he asserts, the case should have been submitted under a verdict director dealing with workmanship, instead of merchantability. In support of this claim defendant merely concludes that the issue of good workmanship was litigated "in great detail" and thus was tried but never submitted. But as discussed earlier, this case deals with damages in the form of mere deterioration of a house, not with the threat of personal injury to anyone. And as such, the present case is one involving an implied warranty that the house would meet a certain standard of quality. The matter was thus correctly submitted under the theory of implied warranty.

1. MAI references are to Missouri Approved Jury Instructions, 3d edition, 1981.

■ Defendant also contends that the trial court erred in failing to include in plaintiffs' verdict director the phrase: "unless you believe plaintiff is not entitled to recover by reason of Instruction Number ____." This phrase, more commonly referred to as a "tail," is intended to refer the jury's attention to the defendant's affirmative defense. So where an affirmative defense has evidentiary support and is therefore properly included, the failure to include the tail is reversible error. *State ex rel. Missouri State Highway Comm. v. Hensel Phelps Const. Co.,* 634 S.W.2d 168, 175 (Mo. banc 1982).

Plaintiffs in turn argue that the trial court did not err in excluding the tail, but did err in a related aspect. Their argument is that there was no error in excluding the tail because there was no evidentiary support for defendant's affirmative defense[2] and, therefore, the error was not in leaving off the tail but in including the affirmative defense in the instruction package.[3]

■ Whether or not there was evidentiary support for defendant's affirmative defense turns on whether defendant disclaimed any implied warranties. And in proving such a disclaimer defendant "must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. . . . A knowing waiver of this protection will not be readily implied." *Crowder v. Vandendeale,* supra, 564 S.W.2d at 881, n. 4. Defendant presented no evidence that there was a knowing waiver of any implied warranties. Plaintiffs, on the other hand, elicited testimony from defendant in which defendant denied ever telling plaintiffs that he was limiting his responsibility on the construction. In light of the foregoing we find that there is no evidentiary support for the contention that defendant disclaimed any implied warran-

ties. The lower court thus erred in including the affirmative defense within the instruction package, but did not so err in leaving the tail off plaintiffs' verdict director. Defendant's first point relied on is denied.

■ Defendant's next point charges that the lower court committed error in allowing plaintiffs to testify as to the diminution in the value of their house in that such testimony was not in conformity with the pleadings, not ascertained at the appropriate point in time and not based on the requisite fair market value. As to being in conformity with the pleadings, defendant points out that plaintiffs' pleadings allege that the value of the house dropped by $5,000 and that the cost of repairs was $12,000 for a total amount prayed for of $17,000. At trial, plaintiffs were permitted to testify over defendant's objection that the purchase price of the house was $35,000, and that the value after discovering the damage was $2,500, for a diminution in value of $32,500. After the jury returned a verdict of $25,000 the trial court ordered remittitur to the amount of $17,000. Even though "'amendment to the pleadings to conform with the evidence are to be freely allowed where the presentation of the merits will be subserved and where the objecting party will not be prejudiced in the presentation' of his case" [*East v. Landmark Central Bank & Trust Co.,* 585 S.W.2d 222, 225[6] (Mo.App.1979)], we find here that the pleadings were never amended and therefore the prejudicial testimony outside the pleadings should have been excluded. As such, it is unnecessary at this point to rule on the other two subpoints.

■ Defendant's fourth point alleges that the trial court erred in submitting an MAI 4.17 damage instruction to the jury instead of the usual MAI 4.02 instruction.

2. The affirmative defense, based on MAI 32.25, reads: "Your verdict must be for Defendant if you believe: Defendant warned the Plaintiffs of the ground conditions on the building site the Plaintiffs selected but the Plaintiffs required the Defendant to construct the house on that site in disregard of the Defendant's warning."

3. Respondents may allege such error since "a respondent may attack the erroneous rulings of the trial court for the purpose of sustaining a judgment in *respondent's* favor." *Senter v. Ferguson,* 486 S.W.2d 644, 648[7] (Mo.App. 1972).

The difference between the two is that 4.02 allows the lesser of diminution in value and cost of repair, whereas 4.17 allows only diminution in value. Also, 4.02 allows additional recovery for loss of use of the property, whereas 4.17 allows additional recovery for *any* other damage sustained as a direct result of the property's shortcomings. There are numerous cases supporting the proposition that the lesser of diminution in value and cost of repair is the proper measure of damages. *Ribando v. Sullivan,* 588 S.W.2d 120, 124 (Mo.App.1979); *Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 524[2] (Mo.App.1980). Especially where, as here, the damage is limited to property damage. *Stegan v. H.W. Freeman Const. Co., Inc.,* 637 S.W.2d 794, 798[9] (Mo.App. 1982). Plaintiffs have produced no cases to the contrary. We find that the lower court erred in using MAI 4.17 instead of 4.02.

 Defendant finally asserts that the trial court erred in admitting fourteen pictures of the damage to the house because the pictures were taken two years after the house was completed and thus did not accurately depict the condition of the house as it existed immediately after the breach. It is true that there have been cases in which the pictures were taken too remotely from the time of the breach. See *Ribando v. Sullivan,* supra, 588 S.W.2d at 125. But in *Ribando* the pictures were taken six years after the breach occurred, whereas in our case only two years have elapsed. And, if one considers the time of discovering the defect as the time of breach, the time period is significantly shortened.

Defects in the construction of a house are not single events, such as house fires or explosions—they are ongoing harms. The time of improper construction of a foundation could be considered to be the "time of breach." Yet if only pictures of the foundation at that specific point in time are admissible, no pictures would ever be admitted because no homeowner would know the defect existed. It is a matter of what amount of time will be considered to be too long, and in the present case we cannot say with a firm belief that the lower court

erred in allowing the pictures to be introduced. *Murphy v. Carron,* 536 S.W.2d 30, 32[2] (Mo. banc 1976).

Because of the aforementioned errors, the judgment is reversed and the cause remanded.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.