**J. STILES, INC., Appellant,**

**v.**

**Jack EVANS and Mary Kay Evans, Appellee.**

**No. 05–83–00490–CV.**

Court of Appeals of Texas, Dallas.

Oct. 31, 1984.

Rehearing Denied Dec. 10, 1985.

See also Tex.App., 667 S.W.2d 178.

C. Thomas Wesner, Jr., Wesner, Coke, Boyd & Clymer, Dallas, for appellant.

Royal Brin, Jr., Strasburger & Price, Boyd Waggoner, Dallas, for appellee.

Before the court en banc.

STEPHENS, Justice.

Jack and Mary Evans filed suit against J. Stiles, Inc., for breach of express and implied warranties and for damages under the Deceptive Trade Practices Act resulting from the use of faulty brick on the home that they bought from Stiles. Judgment, with trebled damages, was rendered

against Stiles in the amount of one hundred fifty-five thousand, five hundred eighty-two dollars ($155,582) plus attorney's fees. From this judgment Stiles appeals, asserting sixty points of error. We address only those facts and issues relevant to the disposition of the case. For the reasons stated below, we reverse and render a take nothing judgment against Evans.

Prior to purchasing the house in question, Jack and Mary Evans observed that certain brick were cracked or broken, including some brick that were crumbling, with some parts fallen away and some faces popped off. Consequently, Evans negotiated an additional paragraph in the contract for the sale which stated: "Cracked and broken brick to be replaced by Seller to Buyer's satisfaction." Stiles replaced the cracked or broken brick, and the sale was consummated on or about February 9, 1979. At the closing, Evans received an express home owner's warranty which contained approved standards from the Home Owner's Warranty Council of Metropolitan Dallas, Inc. (HOW).

In a letter dated March 9, 1979, Evans complained that the brick continued to disintegrate in many areas and requested assurance in writing from Stiles that Stiles would continue to replace cracked or broken brick and pay for damage to plants resulting from the brick replacement as long as the brick continued to deteriorate. In response to the letter, Stiles replaced the additional cracked or broken brick, but he refused Evans' demand for an extended warranty of replacement of deteriorated brick.

Evans made no further demand for replacement of cracked and broken brick. However, on June 4, 1980, Evans wrote to the HOW counsel to institute arbitration in which he sought to have Stiles replace all the brick on the house with a different type of brick. The HOW arbitrator awarded Evans replacement of cracked and broken brick on the house, denied repair of decorative walls, and required Stiles to apply a penetrating type of moisture barrier on the house brick.

On July 1, 1980, Evans wrote a letter notifying Stiles that he intended to file suit under the Deceptive Trade Practices Act because the HOW warranty was essentially worthless. On July 17, 1980, Evans again wrote to Stiles explaining that all the brick needed replacement because the problem was a continuing one and could not be remedied in any other way. On January 12, 1981, Evans agreed to accept the HOW arbitration award if Stiles would give a ten year additional warranty on the brick and agree to pay certain other expenses. Stiles agreed to comply with the arbitration award but refused to pay additional costs or give an additional warranty, contending that his compliance with the HOW arbitration award fulfilled his warranty obligations. Thereafter, Evans refused to accept Stiles' offer to replace the cracked and broken brick under the HOW warranty and filed suit on March 18, 1981.

■ The jury found that Stiles had made an express warranty to replace cracked and broken brick to Evans' satisfaction. Evans contends that this warranty was created by the additional paragraph he negotiated in the contract for sale which ultimately merged with his deed at closing. Stiles maintains that the HOW warranty was the only express warranty that survived closing. In either case, Evans cannot recover for the breach of an express warranty to replace the cracked or broken brick because he failed to meet his burden of proving damages. The damages issue answered by the jury concerned the replacement of *all* the brick on the house. While this may be supportive of damages for breach of an implied warranty, it is not supportive of damages for breach of an express warranty to replace *cracked* or *broken* brick. The issue supporting damages for breach of an express warranty to replace cracked or broken brick was not answered because it was made contingent upon the jury's finding that Evans was unreasonable in asking Stiles to replace all the brick and the jury found that his request was reasonable. Because Evans neither objected to the issues as they were presented to the

jury nor complained that the issue of damages for replacement of cracked or broken brick remained unanswered, he cannot now complain that no damages were found for breach of an express warranty.

The charge to the jury included two issues on implied warranties which asked, first, whether the house was constructed in a good workmanlike manner, and second, whether it was habitable. Stiles objected to these issues at trial and now contends that, by separating "good workmanlike manner" and "habitability" into two issues, the court erroneously bifurcated the implied warranty recognized in *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968). Further, he contends that, because the jury found that the house was habitable, as a matter of law he did not breach the *Humber* implied warranty. We agree.

The Texas Supreme Court first extended implied warranties to the sale of real estate in *Humber*, 426 S.W.2d 554. The *Humber* decision emerged from a situation in which a widow purchased a house from a builder, and the house was constructed with such poor workmanship that it caught on fire the first time a fire was lighted in the fireplace. With these facts before it, the court in *Humber* rejected the doctrine of caveat emptor and "held that a builder-vendor who built and conveyed a house impliedly warranted that the house was constructed in a good workmanlike manner and was suitable for human habitation." *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982).

Evans maintains that *Humber* provides for two separate warranties. He relies upon the use of the plural form "warranties" in *Watel v. Richman*, 576 S.W.2d 779 (Tex.1978), in which the supreme court referred to "the implied warranties described in *Humber*...." *Id.* at 780. We disagree. The court in *Watel* affirmed *Richman v. Watel*, 565 S.W.2d 101 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.), in which the appellate court had reversed a summary judgment because disputed facts existed. The supreme court had before it the appellate holding that the wording of an express

written warranty did not limit "such implied warranty of fitness." *Richman*, 565 S.W.2d at 102. In *Watel*, 576 S.W.2d 779, the supreme court specifically reserved this question which it later addressed in *G–W–L*, 643 S.W.2d 392, stating that "the implied warranty of fitness" could be excluded by express language in a contract. Thus, we do not construe the use of the plural form "warranties" in *Watel* as intending to bifurcate the *Humber* warranty that a house will be constructed in good workmanlike manner and suitable for human habitation.

In *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex.1983), the court extended liability of the builder for this "implied warranty of habitability" to subsequent purchasers of a house where latent defects manifested themselves after the purchase. In *Gupta*, the first purchaser sold his new house after living in it only three months. Subsequently, because of a defect in the slab foundation, the house settled excessively "causing the walls to crack, the roof to leak, and the patio to pull away from the rest of the house." *Id.* at 169. Thus, the house became unsuitable for human habitation.

There are no Texas cases extending the *Humber* warranty to items of workmanship that do not affect the habitability of a house. Rather, in *Turner v. Conrad*, 618 S.W.2d 850 (Tex.Civ.App.—Ft. Worth 1981, writ ref'd n.r.e.), the court of appeals stated: "Even in cases where implied warranties were deemed existent as applied thereto, it has never been extended to fences, dwellings, and ancillary construction in and of themselves, whether erected to be sold at the same time as the principal structure or not." *Id.* at 853; *see also Anthony Industries, Inc. v. Ragsdale*, 643 S.W.2d 167, 174 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

▪ We hold that, in *Humber*, the court created a single implied warranty that a house would be constructed in good workmanlike manner and suitable for human habitation. The jury finding, that the Evans' house was habitable, is a finding that Stiles did not breach the *Humber* implied

warranty. Thus, we sustain Stiles' points of error.

Accordingly, we reverse and render a take-nothing judgment against Evans.

GUITTARD, C.J., and ALLEN, CARVER, GUILLOT and VANCE, JJ., join in the majority opinion.

STOREY, J., concurs in the result of the majority opinion.

AKIN, ROWE, SPARLING, STEWART and WHITHAM, JJ., join in the dissent.

SHUMPERT, Justice, dissenting.

I respectfully dissent. I write to express my views on the matters addressed by the majority. I do not address the other issues raised by Stiles in points of error not discussed in the majority opinion. The majority holds that the implied warranty of quality that *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968), extends to the sale of new houses is breached only if the house is neither constructed in a good and workmanlike manner nor is suitable for human habitation. This holding in effect means that in Texas there is no implied warranty of good and workmanlike construction independent of an implied warranty of habitability in sales of new homes.

The majority, in my view, reads far too much into the fact that the *Humber* court recognized an implied *warranty* of construction in a good and workmanlike manner and habitability. The use of the term "warranty" in the singular is by no means dispositive of the question of whether there is an implied warranty of habitability distinct from the implied warranty of workmanlike construction. The Colorado Court of Appeals, in *Hoagland v. Celebrity Homes, Inc.*, 40 Colo.App. 215, 572 P.2d 493, 494 (1977), referred to the "implied warranty of habitability and workmanlike construction" but nonetheless affirmed an award for "breach of the builder's implied warranty of workmanlike construction." Mississippi has adopted the *Humber* formulation that there is "an implied warranty that the home was built in a workmanlike manner and is suitable for habitation." *Brown v. Elton Chalk, Inc.*, 358 So.2d 721, 722 (Miss.1978); *Oliver v. City Builders, Inc.*, 303 So.2d 466, 470 (Miss.1974). Nevertheless, the Mississippi Supreme Court has recognized an independent implied warranty of good and workmanlike construction. *Keyes v. Guy Bailey Homes, Inc.*, 439 So.2d 670, 672 (Miss.1983).[1]

---

1. Other jurisdictions which have formulated the warranty of quality in essentially the same way as *Humber* but have acknowledged an independent implied warranty of construction in a good and workmanlike manner include: *Connecticut, Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 378 A.2d 599, 601 (1977) (uses *Humber*-like language), *Vernali v. Centrella*, 28 Conn.Sup. 476, 266 A.2d 200, 201–04 (1970) (recognizes independent implied warranty of good and workmanlike construction); New Jersey, *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 789–91 (1979) (applies warranty of good and workmanlike construction), *McDonald v. Mianecki*, 79 N.J. 275, 398 A.2d 1283, 1292 (1979) (uses *Humber*-like language); New York, *DeRoche v. Dame*, 75 A.D.2d 384, 430 N.Y.S.2d 390, 392 (1980), *app. dism'd* 51 N.Y.2d 821, 433 N.Y.S.2d 427, 413 N.E.2d 366 (1980) (uses Texas language), *Centrella v. Holland Construction Corp.*, 82 Misc.2d 537, 370 N.Y.S.2d 832, 834–35 (1975) (recognizes warranty of good and workmanlike construction); Oklahoma, *Jones v. Gatewood*, 381 P.2d 158, 159 (Okla.1963) (uses *Humber*-like language); *Elden v. Simmons*, 631 P.2d 739 (refers to "warranties" of habitability and workmanlike construction, allows recovery for crumbling brick); Oregon, *Yepsen v. Burgess*, 269 Or. 635, 525 P.2d 1019, 1022 (1974) (uses *Humber*-like language); *Beveridge v. King*, 50 Or.App. 585, 623 P.2d 1132, 1133 (recognizes warranty of good and workmanlike construction); South Dakota, *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W.2d 803, 809 (1967) (uses *Humber*-like language); *Scott v. Wagner*, 274 N.W.2d 266, 267 (S.D.1979) (allows recovery for breach of implied warranty of construction in a good and workmanlike manner). Courts in Arizona, *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 592 P.2d 1294, 1299 (1979), and Rhode Island, *Casavant v. Campopiano*, 114 R.I. 24, 327 A.2d 831, 833 (1974) have referred to the implied "warranties" of habitability and workmanship. In addition, courts in a number of jurisdictions which have formulated the implied warranty of quality somewhat differently from *Humber* seem to have recognized an independent implied warranty of construction in a good and workmanlike manner in new home sales. These include courts in California, *Pollard v. Saxe & Yolles Development Co.*, 12 Cal.3d 374, 15 Cal.Rptr. 648, 525 P.2d 88,

In addition, the cases the majority cites do not support its position. *Watel v. Richman,* 576 S.W.2d 779 (Tex.1978) did involve an apparent breach of the implied warranty of habitability. Thus, as the majority insists, the fact that the supreme court referred to "the implied *warranties* described in *Humber,* ..." 576 S.W.2d at 780 (emphasis added), is not decisive. Still, *Watel* nowhere holds or even states as *dictum* that there is no independent implied warrant of construction in a good and workmanlike manner when there is a sale of a new home. Nor do *Gupta v. Ritter Homes, Inc.,* 646 S.W.2d 168 (Tex.1983); *Turner v. Conrad,* 618 S.W.2d 850 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.); or *Anthony Industries, Inc. v. Ragsdale,* 643 S.W.2d 167, 174 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) support the majority's holding. *Gupta* is merely a case like *Watel* in which the warranty of habitability was the warranty at issue. *Turner* merely holds that the *Humber* warranty does not extend to "ancillary construction" such as fences. *Turner,* 618 S.W.2d at 853.[2] *Anthony Industries* cites *Turner* for this proposition. *Anthony Industries* and

*Turner* do not, as the majority implies, support the proposition that the implied warranty of good and workmanlike construction of a new house extends only to items of workmanship that affect the habitability of a house.

I would hold that the relevant Texas authority dictates that there is an independent implied warranty of construction in a good and workmanlike manner in a sale of a new house. When one looks at the cases that the supreme court cited in *Humber* to support its position that there is an implied warranty of quality in new home sales, one finds cases asserting both an implied warranty of habitability, such as *Glisan v. Smolenske,* 153 Colo. 274, 387 P.2d 260 (1963) and *Hoye v. Century Builders,* 52 Wash.2d 830, 329 P.2d 474, 476 (1958), and an implied warranty of construction in a good and workmanlike manner, such as *Loma Vista Development Co. v. Johnson,* 177 S.W.2d 225 (Tex.Civ.App.—San Antonio 1943) (*dictum*), *rev'd on other grounds,* 142 Tex. 686, 180 S.W.2d 922 (1944) and *Moore v. Werner,* 418 S.W.2d 918 (Tex.Civ. App.—Houston [14th Dist.] 1967, no writ).

91 (1974); Florida, *Schmeck v. Sea Oats Condominium Association, Inc.,* 441 So.2d 1092, 1097 (Dist.Ct.App.1983); Illinois, *Petersen v. Hubschman Construction Co., Inc.,* 27 Ill.Dec. 746, 389 N.E.2d 1154, 1159–1160 (1979) (warranty of habitability construed broadly to include warranty against "defects in substance in construction"); Kentucky, *Crawley v. Terhune,* 437 S.W.2d 743, 745 (Ky.1969); Maine, *Wimmer v. Down East Properties, Inc.,* 406 A.2d 88, 93 (Me. 1979); Missouri, *Steffens v. Paramount Properties, Inc.,* 667 S.W.2d 725, 727 (Mo.App.1984), *Ribando v. Sullivan,* 588 S.W.2d 120, 122–23 (Mo.App.1979); *but see Crowder v. Vandendeale,* 564 S.W.2d 879, 882 (Mo.1978) (no tort recovery for lack of ordinary care in construction by homebuilder), *Lieber v. Bridges,* 650 S.W.2d 688, 690 (Mo.App.1983) (evidence of unworkmanlike conduct irrelevant in implied warranty case), *also Clark v. Landelco, Inc.,* 657 S.W.2d 634, 635–36 (Mo.App.1983); Nebraska, *Henggeler v. Jindra,* 191 Neb. 317, 214 N.W.2d 925, 926 (1974); North Carolina, *Hartley v. Ballou,* 286 N.C. 51, 209 S.E.2d 776, 783 (1974), *George v. Veach,* 313 S.E.2d 920, 922 (Ct.App.1984); North Dakota, *Carlson Homes, Inc. v. Messmer,* 307 N.W.2d 564, 567 (N.D.1981); Ohio, *Vanderschrier v. Aaron,* 103 Ohio App. 340, 140 N.E.2d 819, 821 (1957), *but see Mitchem v. Johnson,* 7 Ohio St.2d 66, 218 N.E.2d 594, 598–99 (1966) (perhaps

abandoning the implied warranty theory altogether); Tennessee, *Dixon v. Mountain City Construction Co.,* 632 S.W.2d 538, 541–542 (Tenn. 1982); West Virginia, *Gamble v. Main,* 300 S.E.2d 110, 113, 116 n. 9 (W.Va.1983). The following states, however, seem to find habitability, in the Texas sense, an essential element of the implied warranty: Alabama, *Sims v. Lewis,* 374 So.2d 298, 303 (Ala.1979); *but see B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 671–72, 674 (1979); Idaho, *Bethlahmy v. Bechtel,* 91 Idaho 55, 415 P.2d 698, 711 (1966); Indiana, *Theis v. Heuer,* 264 Ind. 1, 280 N.E.2d 300, 303 (1972); Michigan, *Weeks v. Slavick Builders,* 24 Mich.App. 621, 180 N.W.2d 503, 507 (1970), *aff'd on other grounds,* 384 Mich. 257, 181 N.W.2d 271 (1970) (warranty called "warranty of fitness for purpose intended"), *Ramos v. Holmberg,* 67 Mich.App. 470, 241 N.W.2d 253, 255 (1976) (warranty simply called "warranty of habitability"); Montana, *Chandler v. Madsen,* 642 P.2d 1028, 1032 (Mont.1982); Washington, *House v. Thornton,* 76 Wash.2d 428, 457 P.2d 199, 203 (1969).

2. *Turner* also grounded its decision in the case on the fact that the "principal structure" was used and not new and on the fact that the buyers had agreed to take the property "in its present condition." *Id.* at 852–53.

The *dictum* from *Loma Vista* that the supreme court quoted with approval was: "By offering the [new] house for sale as a new and complete structure appellant impliedly warranted that it was properly constructed and of good material and specifically that it had a good foundation...." *Moore v. Werner* concerned defects in a patio and driveway, defects which in no way could be deemed to constitute a breach of the implied warranty of habitability. *See Kamarath v. Bennett*, 568 S.W.2d 658, 661 (Tex.1978) (implied warranty of habitability in rental housing breached only if there are defects "in the facilities that are vital to the use of the premises for residential purposes"); *also Johnson v. Highland Hills Drive Apartments*, 552 S.W.2d 493, 496 (Tex.Civ.App.—Dallas 1977), *writ ref'd n.r.e. per curiam*, 568 S.W.2d 661, 662 (Tex.1978). The *Humber* court quoted with approval the *Moore* court's holding that "It was the seller's duty to perform the work in a good and workmanlike manner and to furnish adequate materials, and failing to do so, we believe the rule of implied warranty of fitness applies." *Moore v. Werner*, 418 S.W.2d at 920, *quoted in Humber v. Morton*, 426 S.W.2d at 561.

*Moore* is not the only Texas decision finding an implied warranty of construction in a good and workmanlike manner in new home sales. *Certain-Teed Products Corp. v. Bell*, 411 S.W.2d 596, 599 (Tex.Civ.App. —Amarillo 1966), *aff'd on other grounds*, 422 S.W.2d 719 (Tex.1968), which concerned the sale of a new house, held that there was a "principle of implied warranty for good and workmanlike construction required of the builder regardless of whether there are written specifications...." *Gibson v. John D. Campbell and Co.*, 624 S.W.2d 728, 733 (Tex.App.—Fort Worth 1981, no writ) (builder-vendor under duty to construct house in a good workmanlike manner, citing *Humber*); *New Home Construction Corp. v. O'Neill*, 373 S.W.2d 798, 799–800 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.) (recovery allowed for defects in material and workmanship even in absence of express warranty); *Lincoln v. Pohly*, 325 S.W.2d 170, 172–73 (Tex.Civ.App.—Texarkana 1959, writ ref'd n.r.e.) (failure to construct and finish house with good workmanship and good materials renders contractor liable for resulting damages). *Certain-Teed* has not lost its vitality in the wake of *Humber*. *Thomas v. Atlas Foundation Co., Inc.*, 609 S.W.2d 302, 303–04 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.) cites *Certain-Teed* for the general proposition that in construction contracts there is an implied warranty of construction in a good and workmanlike manner running from the sub-contractor to the consumer.

*Thomas* is, unfortunately, not dispositive of the present case since the construction contract in *Thomas* did not involve the sale of a new house, but rather addition of a porch to a house previously constructed and bought. However, *Thomas* does highlight the fact that the majority opinion of the instant case would exempt builder-vendors of new homes from the general rule that construction contractors are subject to an independent implied warranty of construction in a good and workmanlike manner. *Rowson v. Fuller*, 230 S.W.2d 355, 357 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.); *Metropolitan Casualty Co. of New York v. Medina Rural High School District No. 5*, 53 S.W.2d 1026, 1028 (Tex.Civ. App.—San Antonio 1932, writ dism'd). I see no warrant for such an exemption.

Even before *Humber*, the Texas Courts of Civil Appeals had recognized an independent implied warranty of construction in a good and workmanlike manner in new home sales. The thrust of *Humber* was to expand the buyer's remedies in new home sales. At best, it is implausible that *Humber* overruled the decisions recognizing an independent implied warranty of construction in a good and workmanlike manner and placed on homebuyers the greater burden of proving breach of *both* the warranty of good and workmanlike construction and the warranty of habitability in order to recover. I regard *Humber* as an approval of those Texas cases finding an independent implied warranty of good and work-

manlike construction and additionally as an adoption of the implied warranty of habitability recognized in some of the cases from other jurisdictions which the *Humber* court cited. I would therefore hold that a buyer of a new home may recover *either* for breach of the warranty of habitability *or* for breach of the warranty of construction in a good and workmanlike manner. I would overrule Stiles in his point of error that the majority sustains in their determination to reverse and render a take-nothing judgment against Evans.

AKIN, ROWE, SPARLING, STEWART and WHITHAM, JJ., join in the dissent.