**Leonard M. DIANA, Appellant,**

v.

**M. R. PARKS, Appellee.**

**No. 7905.**

Court of Civil Appeals of Texas.
Texarkana.
Oct. 29, 1968.

Harold B. Berman, Berman & Fichtner, Dallas, for appellant.

James W. Rainey, Jr., Irving, for appellee.

CHADICK, Chief Justice.

The plaintiff as purchaser, and defendant as seller, entered into a written contract for the sale of a lot and partially completed house thereon in an addition to the City of Irving, Texas. Besides provisions usual to a realty sales contract the parties added a number of provisions pertaining to construction of the building in progress. The construction provisions of the contract figuring in the lawsuit as expressed obligations of the seller are as follows:

"5. The Seller agrees to grade the lot at his own expense and labor so that there is a positive slope perpendicular to the house walls at all points, paying particular attention to the region under the deck and behind the airconditioner.

"7. The Seller agrees to have a termite inspection certificate and to have all necessary remedial action taken at his own expense and labor.

"8. The Seller agrees to perform the following at his own expense and labor:

(a) Install a vent to the attic space for the clothes dryer * * *

(b) * * *

(c) * * *

(d) * * *

(e) move the water spigot under the deck so that it is easily accessible,

(f) * * *

(g) fill the planter in front of house with good quality soil,

(h) * * *

"10. The Seller agrees to guarantee the house for one year after date of occupancy."

The plaintiff's pleading lists as defective and uncorrected items and conditions the following:

(from Original Petition)

"1. The drainage under the house was defective, which allowed water to stand under the said house, and which requires the construction of a drainage system to take said water from beneath said house.

"2. The foundations of the said house are continually wet, and because of said moisture, the wooden sections thereof have begun to rot.

"3. Outside water line and faucet at the rear of the house remains to be installed to replace one that was improperly installed.

"4. The flower box on the front of the house was improperly constructed, requiring that new construction be done in the same and the installation of a concrete bottom with reference thereto.

"5. The defendant in attempting to make repairs to the drain of the lot upon which the house is constructed and the drainage system with reference thereto destroyed the lawn and other improve-ments made to the yard of said house, which damage requires additional work."

(from Trial Amendment)

"1. Concrete between driveway and house.

2. Rerouting gutter and installing downspouts.

3. Providing caulking compound for ·, cracks in cement, foundation, etc.

4. Replacing concrete walk between porch and driveway.

5. Repairing roof.

6. Sanding and repairing air conditioning damaged by grating.

7. Dishwasher repairs.

8. Termite proofing house."

The plaintiff began trial on pleadings presenting a theory that defendant had by written contract and expressed warranty agreed to construct the house in a good and workmanlike manner, and guaranteed to correct any defect found therein within one year. By trial amendment the plaintiff alleged that the defendant impliedly warranted construction of the house in a good and workmanlike manner.

■ The trial court rendered judgment that plaintiff take nothing. The plaintiff, Leonard M. Diana, appellant here, appealed and presents as his first point of error the following:

"The trial court erred in finding that the house in question was constructed in a good and workmanlike manner, and that there were no defects in the construction of such house, such finding being against the great weight and preponderance of the evidence."

As first seller of a newly constructed house, defendant M. R. Parks, appellee here, impliedly warranted that the house was constructed in a good and workmanlike manner and was suitable for human habitation. Humber v. Morton, 426 S.W.2d 554 (Tex.

1968). In their briefs the parties tacitly agree that the guarantee in the written contract imposed virtually the same obligations and liability upon Mr. Parks, that is, Mr. Parks guaranteed that the house was constructed in a good and workmanlike manner, was suitable for human habitation, and that he would remedy any fault in good workmanship appearing within one year after date of occupancy. The written contract additionally obligated Parks to do and furnish specified construction work and betterments, such as grading the lot in a specific way, furnishing a certificate of termite inspection, installing adequate vents, etc.

The several separate items of construction claimed to be defective and constituting breach of the implied warranty of good workmanship are not separately made the basis of points of error. All are argued under point one. However, defective drainage, which allowed water to accumulate under the house, was a principal subject of contention and except for the items subject to the expressed agreement, was the source of the bulk of the cost and damage the plaintiff Diana sought to recover in the trial court. The failure of appellant to brief defective drainage under a separate point of error and direct attention to the pages where evidence might be found, requires a tedious search through the record for evidence bearing upon the question. In Humber v. Morton, Judge Norvell mentioned:

"* * * Construction engineers who testified under oath for Mrs. Humber, as disclosed by the statement of facts upon the first trial which was made a part of the summary judgment record here, stated that the chimney was defective. Mr. Mays, who built the chimney, denied that his work was substandard or deficient in any way."

This action pitted similar witnesses and produced testimony of similar effect on the adequacy of drainage. Evidence of the character mentioned in Humber was held to be sufficient to raise an issue of fact for jury determination. The evidence here concerned accumulation of water under the house, as well as defective drainage. The builder said none accumulated except as a result of a leaking pipe, which was repaired. He denied drainage was inadequate and the existence of excessive moisture under house, maintaining the foundation vents were sufficient to regulate it, and testified that moisture such as he found was beneficial and necessary in stabilizing the clay soil under the foundation. The engineer said drainage was inadequate and the water accumulation under the house was excessive. When the trial judge exhibited a concern about the source of the accumulated water the engineer suggested the possibility of the existence of an underlying strata of impervious clay that would permit water to rise under the house if the clay was pierced, broken, or weakened in grading the lot or constructing the building's foundation. The buyer testified to the existence of mud and water under the house much of the time before a drainage system was finally installed. Dr. Diana produced pictures he had made showing water standing in drainage trenches under the house, and said water trickled from underneath concrete beams supporting the structure.

■ This court can not with requisite confidence go further than to say that the recorded evidence raises a fact issue on the adequacy of drainage. The weight and preponderance appears sufficient to support a finding that drainage was defective, had the trial court so found. There is no proof so conclusive in nature as to justify a finding, when all evidence is weighed, that the great weight and preponderance of it shows a defect in drainage.

■ Having reached the conclusions expressed on the principal defect alleged (defective drainage), this court, in the absence of separate points of error pertaining to separate breaches of implied warranty, is not disposed to search the record to evaluate other and separate claims. Properly, the ruling upon each item claimed should be the subject of a point of error. Appellate

Procedure in Texas § 12.04 [3] 12.04 [4]. Appellant's point of error No. One is overruled.

■ The several particulars in which the seller failed to remedy defective workmanship guaranteed by the written contract are not briefed separately, but all such incidents are argued under appellant's point II reading as follows:

"The trial court erred in finding that the defendant fully complied with and performed all of the obligations required under the contract between the plaintiff and defendant, such finding being against the great weight and preponderance of the evidence."

Again, for the sake of review the principal items will be noticed. Proof was made that Dr. Diana, after taking possession, had the house treated for termites at a cost of $210.00. The record, however, does not show a breach in this respect; it does not show that the builder did not have the house treated before relinquishing possession or that he did not furnish Dr. Diana a certificate as contracted. Although Dr. Diana was dissatisfied with the grading, and testified it did not meet contract specifications, the builder and the subcontractor who did the grading both testified that it was properly done, and that extra grading and fill was made at the insistence and under the direction of Dr. Diana. Certain concrete walks were razed and replaced. The parties disagreed sharply as to the necessity therefor. Considering the record as a whole, this court can not with confidence and a satisfactory degree of certainty hold that the trial court's findings on such matters are against the great weight and preponderance of the evidence. The second point of error is overruled.

The remaining two points of error assert the trial court erred in reaching the conclusion that neither the expressed guaranty nor the implied warranty was breached. The points must also be overruled for the reasons discussed above. The judgment of the trial court is affirmed.