James and Betty MARCH, Appellants,

v.

Ted E. THIERY, et al., Appellees.

No. 13–86–385–CV.

Court of Appeals of Texas,
Corpus Christi.

March 18, 1987.

On Motion For Rehearing
April 16, 1987.

William T. Deane, Harlingen, for appellants.

Curtis Bonner, Bonner & Bonner, Harlingen, for appellees.

Before UTTER, SEERDEN and DORSEY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a non-jury trial in which a judgment was rendered in favor of

the plaintiffs in a suit over the construction of a house. The judgment of the trial court is reformed, and as reformed, is affirmed.

Appellant, Mr. March, is, and was, a house-builder at all times material to this case. March built the house in question himself, and lived in it with his family for five to six years. The interior of the house was never completed by March, and was sold to Mr. and Mrs. Thiery in an unfinished condition. Mr. Thiery planned to finish the house himself. In the course of attempting to finish the house, Thiery encountered many alleged latent defects and points of faulty construction. Suit was filed, under the Texas Deceptive Trade Practices Act, against Mr. and Mrs. March alleging breach of an implied warranty that the house was constructed in a good workmanlike manner and was suitable for habitation. Misrepresentation and failure to disclose were also alleged.

Appellees claimed that appellants misrepresented that "the house was built better and with more care than a normal house ... because Mr. March was a builder and therefore did a better job than would have been done otherwise." Appellees also claimed that the foundation was laid at ground level, with no fill dirt and was not sufficiently thick. Appellees further contended that the house was built over a concrete irrigation pipe, which caused leaks in and flooding of the house. Finally, appellees claimed that the roof was poorly constructed, which caused it to sag.

The trial court found that the above allegations were true, that appellants failed to disclose them to appellees, and that these failures were the proximate cause of damages to appellees. The trial court also found that the implied warranty that the house was built in a good and workmanlike manner and fit for habitation was breached. Although the trial court did not find that the breach was a producing cause of actual damages, such a finding is deemed found in support of the judgment. Tex.R. Civ.P. 299.

By their first point of error, appellants contend that the implied warranty that a building constructed for residential use has been constructed in a good workmanlike manner and is fit for habitation does not apply to the facts of this case. Specifically, appellants argue that the warranty is inapplicable because Mr. March was not a "builder/vendor" selling a finished home.

 A contractor who builds a house and sells it impliedly warrants that the house was constructed in a good workmanlike manner and was suitable for human habitation. *Humber v. Morton*, 426 S.W.2d 554 (Tex.1968). This implied warranty extends to subsequent purchasers. *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168 (Tex.1983). The builder/vendor warrants both workmanship *and* habitability. *Evans v. J. Stiles, Inc.*, 689 S.W.2d 399 (Tex.1985).

 Should appellants be permitted to escape liability under the implied warranty merely because they built the house *and* occupied it themselves? We think not. The identity of the first occupant or owner of the home has no impact upon whether the builder/vendor impliedly warrants the construction and fitness of the home to subsequent purchasers. "[T]he implied warranty of habitability and good workmanship is implicit in the contract between the builder/vendor and original purchaser and is automatically assigned to the subsequent purchaser." *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d at 169. The same result is reached whether we consider appellants to be the first purchasers or whether appellees are viewed as the first purchasers. In either case, the *builder/vendor* impliedly warrants that the house was constructed in a good workmanlike manner and fit for human habitation.

Nor are we persuaded by appellants' argument that the implied warranty should not apply in this case because the home that they sold was not a *finished* home. Appellants cite *Humber v. Morton* as support for this contention.

*Humber* does refer to the sale of "completed houses." However, we can discern no reason to distinguish between a "fully completed" home and a "partially completed" home as long as it is clear what *portions* of a "partially completed" home have been fully constructed by the builder. An examination of appellants' argument will help to clarify our holding. Essentially, appellants contend that where a house is estimated to be only 25% completed, as Mr. Thiery did in this case, then *every phase* of the construction of that house must be considered to be only 25% completed. Appellants claim that they "very likely" *would have* installed more rafters in the roof to keep it from sagging. Aside from the questionable expedience of building a roof, shingles and all, and then returning at a later date and adding more rafters, appellants' theory must fail when applied to the foundation.

Mr. Thiery testified that the foundation was built at ground level. Apparently, there was no fill dirt brought in to raise the building site so that ground water would run away from the house. In addition, he also testified that the foundation was only 12 inches thick.

A construction expert testified that several problems are incurred when a foundation is built at ground level. He also testified that the minimum thickness of a foundation on a house such as the one involved in this case would be 24 to 30 inches.

We fail to comprehend how a foundation, upon which a house has already been built, could subsequently be "completed" in order to make it sit above ground level, or be of the desired thickness. The foundation was, by necessity, 100% completed when sold to appellees by Mr. March, the builder/vendor.

It is apparent to us, that Mr. Thiery's estimate that the house was only 25% complete applied to the *entire* house, while some *phases* of the construction were necessarily 100% complete.

■ We hold that when a builder/vendor constructs a building for residential pur-

poses, he impliedly warrants that *whatever* construction he has done, has been done in a good workmanlike manner. Therefore, the implied warranty applies to the sale of an "unfinished" home just as it does to the sale of a "completed" home. Appellants' first point of error is overruled.

By their second point, appellants contend that the trial court erred in awarding damages to the Thiery children because there was no theory of recovery pled to support an award.

■ Mr. and Mrs. Thiery originally purchased this home from appellants. Mrs. Thiery later died, leaving no will. According to Tex.Prob.Code Ann. § 45 (Vernon 1980), her one-half of the community property passed to her children. Therefore, her children, appellees here, own one-half of the house and land involved in this case. They were proper plaintiffs in the court below.

■ Further, no special exceptions to appellees' pleadings were filed and therefore any such complaint has been waived. Tex. R.Civ.P. 90.

■ Appellants also attempt to characterize the childrens' claim as a survival action and contend that a DTPA action does not survive the death of the person who possessed it, citing *First National Bank v. Hackworth*, 673 S.W.2d 218 (Tex. App.—San Antonio 1984, no writ). The children were plaintiffs in their own right through descent and distribution. They could maintain a common law action for breach of the implied warranties of good workmanship and habitability. Appellants' second point of error is overruled.

Points of error three through ten challenge the legal and factual sufficiency of the evidence to support various findings made by the trial court. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985);

*Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

By their third point of error, appellants contend that the evidence is insufficient to support the trial court's finding that they failed to inform appellees that an irrigation pipeline ran underneath the house.

Mr. Thiery testified that neither of the appellants told him about the pipeline. Mr. March testified that he *did* inform Mr. Thiery about the location of the pipeline.

■ When the trial court sits as the trier of fact, it is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Dalton v. George B. Hatley Co.,* 634 S.W.2d 374 (Tex. App.—Austin 1982, no writ). The trial court's finding is supported by Mr. Thiery's testimony. Point of error three is overruled.

By their fourth and fifth points, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's finding that the concrete foundation was not built of a sufficient size.

■ As mentioned earlier, Mr. Thiery testified that the foundation was only 12 inches thick. Mr. Vaughn, appellees' construction expert witness, testified that it should have been at least 24 inches thick. This is sufficient evidence to support the trial court's finding. Points of error four and five are overruled.

By their sixth and seventh points, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's finding that appellants knew that the foundation was of an insufficient size and that the roof was inadequately constructed. By their eighth point, appellants claim that since they did not know these facts, they had no duty to disclose them to appellees. Appellants do not challenge the trial court's finding that they knew about the irrigation pipeline under the house.

■ Where an expert testifies about incidents of substandard building materials and procedures in violation of the Southern Building Standards Code, a knowledge of the industry standards can be imputed to one who is in the business of building houses. *Jim Walters Homes, Inc. v. Gonzalez,* 686 S.W.2d 715 (Tex.App.—San Antonio 1985, writ dism'd). In this case, appellee's expert testified that a roof with "24–inch centers" (space between rafters) *meets* the Southern Building Code. It was his opinion that using 24–inch centers, coupled with inadequate bracing, caused the roof to sag. As to the thickness of the foundation, the expert testified that he did not know whether a 12–inch foundation meets the Southern Building Code specifications. He did state that he has never seen a 12–inch foundation; that "normally an exterior beam [outer wall of the foundation] on a house like that would run a minimum of 24 inches, maybe 30 inches," and that it would probably crack.

■ Under the facts of this case, "knowingly" means actual awareness of the defects in the construction of the house. *See* Tex.Bus. & Com.Code Ann. § 17.45(9) (Vernon Supp.1987). "[A]ctual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." *Id.*

Although imputing knowledge of the Southern Building Code to appellants would not support a finding of knowledge of the existence of these defects, this rule of evidence does lend credence to imputing knowledge of what a reasonably prudent house builder would know. This is especially true in a DTPA case such as this because the provisions of the DTPA are to "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading and deceptive business practices, unconscionable actions, and breaches of war-

ranty and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Com.Code Ann. § 17.44 (Vernon Supp.1987). Furthermore, the trial court could have believed the Marches did in fact represent, as Mr. Thiery stated, that "the house was built better and with more care than a normal house ... because Mr. March was a builder and therefore did a better job than would have been done otherwise."

■ The trial court was at liberty to construe appellees' expert's testimony to be that a reasonably prudent builder would know that building a roof with 24-inch centers without any verticle support, and building a foundation only 12 inches thick, would constitute faulty construction. This knowledge can be imputed to appellants.

■ Even if this knowledge cannot be imputed to appellants, without which the trial courts' findings would be unsupported by the evidence, appellants have not challenged the finding which stated that they had knowledge of the existence of the irrigation pipeline under the house. In fact, they admit that they knew it was there, but claim that they informed appellees of its existence. This admission and finding as to the irrigation pipeline alone is sufficient to support the judgment. Appellants' sixth, seventh, and eighth points are overruled.

By their ninth and tenth points, appellants contend that there is no evidence, or insufficient evidence, to support the award of $27,000.00 in damages.

■ A plaintiff in a DTPA case is entitled to recover the greatest amount of actual damages he has alleged and proven to have been caused by the defendant's conduct. *Cheek v. Zalta*, 693 S.W.2d 632 (Tex.App.—Houston [14th Dist.] 1985, no writ). "Actual damages" has been interpreted to mean damages recoverable at common law. *Id.* at 634. The "benefit of the bargain" measure of damages allows recovery of the difference between the val-

ue as represented and the actual value received. *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369 (Tex.1984). This measure has been approved as a correct method of calculating damages in a DTPA case. *Id.* at 373. Simply stated, the damages in this case are the difference between the value of the house, unfinished and *without* the problems, and the value of the house unfinished and *with* the problems.

■ Appellees' real estate expert, Mr. Hensz, testified regarding his opinion of the value of the house. His testimony was somewhat confusing. He did establish that the value of the house, unfinished and *with* the problems was, at most, $28,140.00 ($15.00/sq. ft × 1876 sq. ft.). However, there is no evidence in the record of the value of the house, unfinished and without the problems. He testified to the value of other finished homes without problems; to the value of this house had it been finished, without specifying whether the estimate was with, or without problems; and to the value of this house, with the problems, but finished. Absent evidence of the value of *this* house, *unfinished* and *without* the problems, the actual damages of $27,000.00 as found by the trial court cannot stand. Appellants' ninth and tenth points are sustained.

However, as stated earlier, the plaintiff in a DTPA action is entitled to recover the greatest amount of actual damages he has alleged and proven to have been caused by the defendants' conduct. Since we have upheld the trial court's judgment regarding the liability issues, we will reform the judgment to reflect that appellees recover the greatest amount of actual damages, if any, which they *did* prove.

■ Another measure of damages which has been approved for DTPA claims is the remedial measure. *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W.2d at 717; *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ). The damages are

based upon the cost of repairs, if repairs are feasible and do not involve economic waste. *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W.2d at 717.

■ Appellees' construction expert testified that the foundation problems could be repaired for approximately $6,324.00. As for the roof, he testified that the problem with the roof cannot be repaired without replacing the rafters. However, he stated that the problem could "be helped by bracing it." This would cost $24.00 per rafter. There are 26 rafters, making the total cost approximately $624.00. Appellants did not dispute these repair estimates, but merely claimed that the repairs were not proven to be necessary at all.

Since the trial court found that the construction defects did exist, and appellants did not contest the repair estimates, appellees conclusively proved their damages under the remedial measure.

Appellees therefore incurred actual damages of $6,948.00. This brings us to appellants' eleventh point of error.

By their eleventh point, appellants claim that the trial court erred in awarding $51,000.00 to Mr. Thiery because such an award is excessive in that it amounts to a quadrupling of the actual damages awarded to him. This point of error would be sustained under the judgment rendered by the trial court because it did in fact award four times the amount of actual damages by first awarding the actual damages, and then awarding three times the amount of actual damages. This is clearly incorrect. *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239 (Tex.1985).

However, in light of our disposition of appellants' ninth and tenth points of error, we will render the judgment that the trial court should have rendered. Tex.R.App.P. 80.

Before we proceed, however, we must explain how the trial court arrived at its judgment and why we must use that same reasoning in rendering a judgment on appeal.

In rendering its judgment, the trial court found actual damages of $27,000.00. It then divided this sum in half, awarding $13,500.00 to Mr. Thiery and $13,500.00 to the Thiery children. It did not treble the childrens' $13,500.00. The trial court did treble Mr. Thiery's $13,500.00.

We, therefore, render judgment in conformity with the trial court's judgment and hold that Mr. Thiery recover $10,422.00 [3 × 3474.00 (½ of $6,948.00)] and that the children recover $3,474.00.

Appellants' remaining points deal with the award of attorney's fees. By their twelfth point, appellants contend that there is no basis for an award of attorney's fees to the children.

■ Although the children could bring a common law action for breach of warranty, we hold that they do not meet the DTPA definition of "consumer" and therefore may not maintain an action under the Act.

■ The DTPA defines "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." Tex.Bus. & Comm.Code Ann. § 17.45(4) (Vernon Supp.1987). One who acquires goods by gift is not a consumer under the DTPA. *Hall v. Bean*, 582 S.W.2d 263 (Tex.Civ.App.—Beaumont 1979, no writ); *see also Rutherford v. Whataburger, Inc.*, 601 S.W.2d 441 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

The DTPA defines consumer in terms of a person's relationship to a transaction in goods or services. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). In this case, the children acquired their interest in the property through descent and distribution, not by purchase or lease. Therefore, they are not consumers under the DTPA. Accordingly, they cannot recover attorney's fees under the DTPA. Appellant's twelfth point is sustained.

By their thirteenth and fourteenth points of error, appellants challenge the legal and factual sufficiency of the evidence to sup-

port the trial court's award of attorney's fees to Mr. March.

■ Appellees' attorney testified that he took the case on a one-third contingency fee basis, and that such a fee arrangement was reasonable for a case such as this and for the services he had rendered. This is sufficient evidence upon which to base an *award* of attorney's fees. *Hochheim Prairie Farm Mutual Insurance Association v. Burnett,* 698 S.W.2d 271 (Tex.App.—Fort Worth 1985, no writ); *Liberty Mutual Insurance Co. v. Allen,* 669 S.W.2d 750 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Texas Farmers Insurance Co. v. Hernandez,* 649 S.W.2d 121 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

■ We must agree, however, that there is no evidence to support the trial court's award of attorney's fees to Mr. Thiery based upon one-third of the amount of damages awarded him by the trial court. We have reformed the judgment to reflect the correct amount of damages to be $10,-422.00. One-third of this amount is $3,474.00. Appellants' thirteenth and fourteenth points are sustained in part.

The judgment of the trial court is REFORMED in accordance with this opinion to reflect that Mr. Thiery, individually, recover $10,422.00, and $3,474.00 in attorney's fees, and that Mr. Thiery, as next friend of Cheryl Lynn Thiery and Joseph Edward Thiery, recover $3,474.00 in damages. As reformed, the judgment is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

In its original opinion, this Court computed the remedial costs of repair in awarding the appellees' damages. Through oversight, the Court failed to include as an element of these damages the appellees' cost of repairing the bedroom wall and carpet. Their damages are in the amount of $1,180.00, and should be added to the judgment in our prior opinion.

The judgment of this Court is REFORMED in accordance with this opinion to reflect that Mr. Thiery, individually, recover $12,193.50, and $4,064.50 in attorney's fees, and that Mr. Thiery, as next friend of Cheryl Lynn Thiery and Joseph Edward Thiery, recover $4,064.50 in damages. As reformed, the judgment of the trial court is AFFIRMED.