cv2-013 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-92-013-CV




ERIC BINDOCK AND JAMIE BINDOCK,



 APPELLANTS


vs.





 CITY OF CEDAR PARK,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 489,311, HONORABLE PETE LOWRY, JUDGE PRESIDING



 



 Eric and Jamie Bindock appeal from a take-nothing judgment in a breach of
contract action they brought against the City of Cedar Park ("Cedar Park"). The trial court
rendered the adverse judgment and made findings of fact and conclusions of law. We will affirm
the judgment.



BACKGROUND


 In September 1988, the Bindocks entered into a contract with Cedar Park granting
a public utility easement. An attached agreement contained three promises by Cedar Park as
"other valuable consideration" for the easement. Cedar Park promised to:



1. Install one fire hydrant within the easement;


2. Provide one free water tap capable of delivering approximately 150 LUE's
[sic] for the Bindocks' use; provided, that this Agreement does not effect
[sic] the Bindocks [sic] obligation to pay community impact fees for such
LUEs of water as a condition of their use; and


3. Remove any oak trees smaller than six (6) inches in diameter which must
be removed to accommodate the city's twelve inch water line within the
easement, in a way that will allow the trees to be replanted by the
Bindocks. In this regard, the city shall make no warranties or
representations as to the ability of such trees to survive such removal and
replanting.



The Bindocks contend Cedar Park broke the third of these promises.

 In February 1989, Cedar Park installed the water main on the easement. The trees
on the easement were simply bulldozed down and were thus unfit for replanting. Some of the
destroyed trees were on the Bindocks' property and some were on an adjoining right-of-way
belonging to the State.



Trial and Judgment

 The Bindocks brought a breach of contract suit alleging that the bulldozing of the
trees violated the third promise in their agreement with Cedar Park. During discovery, Cedar
Park admitted that "numerous" trees were "bulldozed down and/or removed from the ground" on
the Bindocks' land.

 Cedar Park stipulated at trial that some trees were destroyed and that the issue
before the court was "how many and how much." The Bindocks limited their claim to twenty-three trees. At trial, the Bindocks asserted that all of these twenty-three trees were within their
easement and all were under six inches in diameter and thus covered by the agreement. Cedar
Park disputed this number. The engineer in charge of the project testified, over objection, that
it was difficult to identify which of the destroyed trees were from the Bindocks' land and which
were from the state's right-of-way. Although he never testified to a specific number of trees, he
estimated that no more than eight or nine trees were located on the Bindocks' property and
covered by the agreement.

 The Bindocks' expert witness testified that removing trees for replanting required
"boxing" the roots. The engineer in charge of the project testified that removing the trees from
the rocky ground for replanting would have been "very tough stuff." His understanding of the
contract was that "balling" the roots was not required by the agreement, and that he knew of no
way to have removed the trees in a manner which would have allowed replanting. There was no
testimony that trees moved absent one of these two procedures, "boxing" or "balling" the roots,
would have lived. As a matter of fact, the undisputed testimony was that trees removed without
some sort of treatment-procedure would most probably have died.

 As part of its promise to remove the trees, Cedar Park expressly disclaimed any
warranty that the trees would live after removal and replanting. Mr. Bindock conceded that
elaborate "balling" of the roots was not contemplated when the contract was made.

 The trial court rendered a judgment that the Bindocks take nothing. The Bindocks
then requested, and the trial court made, findings of fact and conclusions of law. Pertinent
findings of fact included:



(2) Under the contract, Defendant was to refrain from destroying live oak trees
on Plaintiffs' property which were less than six inches in diameter, and
Defendant was to remove those trees in such a manner as to allow Plaintiff
to replant them, but the contract did not contemplate that the trees would
be in the same condition as trees sold in nurseries.


(3) During the course of Defendant's construction work, some trees were 
destroyed, but the number and size of any trees destroyed on Plaintiffs' 
property is unclear.


(4) Plaintiff failed to present any evidence as to the value of the trees in the 
condition in which they should have been after removal pursuant to the
contract.

. . .


(6) Plaintiff failed to prove which trees were on the plaintiffs' property rather
than on other property, and there was no evidence as to the size or value
of the particular trees which were on plaintiffs' property.



The trial court also made the following conclusion of law:



(1) Plaintiffs' evidence is insufficient to support an award of damages.



The Bindocks bring forth nine points of error.



Points of Error

 The Bindocks' nine points of error present two general questions: (1) Was the
Bindocks' evidence so overwhelming that the trial court's findings that the number and value of
the trees destroyed was unclear are against the great weight and preponderance of the evidence? 
(2) Was the Bindocks' evidence related to the extent of damages either conclusive as a matter of
law, or, so overwhelming that the trial court's finding that proof of damages was insufficient is
against the great weight and preponderance of the evidence?



DISCUSSION


Standard of review

 The appropriate challenge to a finding concerning an issue upon which the
complainant had the burden of proof is either a "matter of law" point or a "against the great
weight and preponderance of the evidence" point. See Raw Hide Oil and Gas, Inc. v. Maxus
Exploration Co., 766 S.W.2d 264, 275-76 (Tex. App.--Amarillo 1988, writ denied); Anderson v.
City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991)(The trial court's findings of fact are
reviewed for factual sufficiency of the evidence by the same standards applicable to jury findings). 
In reviewing great weight and preponderance points, we must examine the entire record to
determine if there is some evidence to support the finding, and then determine whether, in light
of the entire record, the finding is manifestly unjust. In Re King's Estate, 244 S.W.2d 660. 661
(Tex. 1951); Raw Hide, 766 S.W.2d at 276; see generally William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. (1991).

 When a complainant who had the burden of proof on an issue attempts to overcome
an adverse finding on that issue as a matter of law, he must overcome two hurdles. First the
record must be examined for evidence that supports the court's findings, while ignoring all
evidence to the contrary. If there is no evidence to support the finding, then the entire record
must be examined to see if the contrary proposition is established as a matter of law. Sterner v.
Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696
(Tex. 1982).



Number and value of destroyed trees 

 The Bindocks assert in three points of error that the trial court's finding that the
number and value of trees destroyed on their property was unclear is against the great weight and
preponderance of the evidence, and that in making this finding the court considered evidence
erroneously admitted over a valid objection.

 We will first consider the third point of error that evidence was improperly
admitted and considered. To preserve error, an objection must be both timely and specific and
a ruling must be obtained. Tex. R. App. P. 52(a). Preliminary questions concerning the
admissibility of evidence are determined by the trial court. Tex. R. Civ. Evid. 104(a). This
determination will not be overturned absent an abuse of discretion. Steenbergen v. Ford Motor
Co., 814 S.W.2d 755, 760 (Tex. App.--Dallas 1991, writ denied).

 The Bindocks made objections at trial on two occasions when Cedar Park attempted
to introduce evidence controverting Mr. Bindock's testimony that twenty-three trees were
destroyed on his land. The objections were timely and specific. It appears that the first objection
may have been withdrawn without a ruling, but even if error were preserved, we conclude the
evidence was properly admitted.

 The Bindocks argue that Cedar Park's pretrial admission that "numerous oak trees"
were "bulldozed down and/or removed from the ground on plaintiffs' land" was an admission that
all destroyed trees were on the Bindocks' land. Therefore, they claim that any evidence which
would show that some number of the trees was from the adjoining state right-of-way should have
been excluded. The Bindocks claimed at trial that "other property was not an issue, since [Cedar
Park] had already judicially admitted that the destroyed trees were on the Bindocks' property." 
The trial court rejected this contention. The Bindocks misread the scope of Cedar Park's
admission. The admission is more easily understood as Cedar Park's recognition of the fact that
it had destroyed some trees on the Bindocks' land in contravention of the contract. Cedar Park
did not admit, however, that all of the destroyed trees were from the Bindocks' land. Cedar Park
reiterated the admission at the beginning of trial and explained that the disputed issues before the
court were how many trees and how much they were worth. In the same set of requested
admissions, Cedar Park denied that twenty-three trees were destroyed on the Bindocks' land. 
Clearly, the number and location of the trees destroyed remained in dispute after the pre-trial
admission. The trial court did not abuse its discretion in admitting the evidence. We therefore
overrule the Bindocks' third point of error.

 When we consider the record in its entirety, it is apparent that Cedar Park admitted
responsibility for the destruction of some number of trees on the Bindocks' land contrary to the
terms of the agreement. The burden of proof was on the Bindocks to prove by a preponderance
of the evidence how many trees were destroyed and the value of those trees. The trial court found
that they failed to carry this burden. The Bindocks now assert that this finding was against the
great weight and preponderance of the evidence.

 The Bindocks place great emphasis on the fact that their claim was limited to
twenty-three trees. They seem to believe this limitation conclusively proves that twenty-three
trees were destroyed. Their limitation is merely an allegation and has no evidentiary value. See
NBS Southern, Inc. v. Mail Box, Inc., 772 S.W.2d 470, 472 (Tex. App.--Dallas 1989, writ
denied).

 Mr. Bindock testified that twenty-three trees of under six inches in diameter were
destroyed. However, the engineer in charge of the project testified that no more than half of this
number were on the Bindocks' land. The trial court as factfinder was entitled to judge the
credibility of these witnesses and give their testimony appropriate weight. The trial court must
have credited the engineer's testimony on this issue.

 Mr. Bindock's testimony is the only evidence the Bindocks presented as to the
number of trees destroyed. The Bindocks' expert witness gave the retail value of twenty-three
trees of various sizes. Her testimony was based only on the trees in the photographs taken by Mr.
Bindock. She did not claim any other personal knowledge that twenty-three of the Bindocks' trees
were destroyed. Mr. Bindock's testimony, alone, purported to establish that all of the trees in the
pictures were from his land. At one point the Bindocks' expert witness admitted that there was
not enough information in the pictures to judge the actual value of the trees.

 This evidence does not establish that the trial court's finding that the Bindocks
failed to prove the number and value of the destroyed trees is against the great weight and
preponderance of the evidence. We therefore overrule points of error one and two.



Damages

 The trial court found that the Bindocks failed to prove, by a preponderance of the
evidence, the amount of damages they had suffered because of Cedar Park's actions. The
Bindocks challenge this finding in their remaining six points of error, alleging that the trial court
used an improper measure of damages, and that the evidence presented conclusively established
the amount of damages. In the alternative, the Bindocks argue that the trial court's finding is
against the great weight and preponderance of the evidence.

 The Bindocks relied on the testimony of an expert witness to establish the value of
the destroyed trees. She testified regarding the retail value of comparable trees sold in nursery
condition. She also testified that removal for replanting required that a box be built around the
root systems after the trees were removed from the ground and before they were moved. There
is no evidence in the record demonstrating that the trees destroyed were of the same quality as
those sold in nurseries. In addition, there was no evidence that the agreement between themselves
and Cedar Park contemplated that the trees would be removed in accordance with nursery
procedures. To the contrary, Mr. Bindock conceded that "any trees that had to be removed . . .
would [be removed] in such a way as they could be replanted. . . . They weren't going to come
in and make, you know, ball the roots or put it in pots or anything like that." Contrary to the
Bindocks' allegations, the evidence established that the trees were not in nursery condition and
that neither the Bindocks nor Cedar Park intended that the trees would be removed using nursery
procedures. The Bindocks' expert testimony thus provides no evidence of the actual value of the
trees destroyed.

 The proper measure of damages in a breach of contract case is that which will give
the non-breaching party the "benefit of the bargain" or his "expectancy." Leyendecker & Assoc.,
Inc. v. Wechter, 683 S.W.2d 369, 373 (Tex. 1984); March v. Thiery, 729 S.W.2d 889, 895
(Tex.App.--Corpus Christi 1987, no writ). The purpose of this measure of damages is to place
the injured party in as good a position as it would have enjoyed if the other party had fully
performed the terms of the contract. Lakewood Pipe v. Conveying Techniques, 814 S.W.2d 553,
555 (Tex. App.--Houston [1st Dist.] 1991, no writ); Thomas C. Cook, Inc. v. Rowhanian, 774
S.W.2d 679, 686 (Tex.App.--El Paso 1989, writ denied).

 The Bindocks were entitled to an amount of damages which would represent their
position had Cedar Park properly removed the trees pursuant to the terms of the contract. The 
trial court used the correct measure of damages.

 The Bindocks presented no evidence of the value of the trees after removal
according to the terms of the contract. Cedar Park did have some evidence in the record that the
trees would not have survived removal and replanting. There was nothing in the contract
regarding collateral damage to the Bindocks' property resulting from installation of the water main
on the easement and no allegation seeking recovery in tort for such damages.

 Because the trial court used the correct measure of damages and because there is
insufficient evidence to support a damage award under this measure, we overrule points of error
four through nine.



CONCLUSION


 For the reasons stated above, we affirm the trial court's take-nothing judgment.


 

 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: March 10, 1993

[Do Not Publish]