# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00458-CV

**Pradip Podder, Appellant**

**v.**

**Funding Partners L.P.; and Acquisition Funding Source, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-06-000431, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Pradip Podder appeals from the trial court's grant of summary judgment in favor of Funding Partners L.P. and its general partner, Acquisition Funding Source, Inc., (collectively, "Funding Partners") in Podder's suit alleging breach of the implied warranty of habitability in connection with the purchase of his home. Podder also appeals the trial court's order awarding attorney's fees to Funding Partners. We affirm the judgment of the trial court.

## BACKGROUND

On February 4, 2004, Podder purchased a house and lot in Manchaca, Texas from Funding Partners. After moving into the home, Podder discovered that the lot suffered from flooding conditions during heavy rains. According to Podder, when the property floods, the house becomes "an island in the middle of a pond," and the toilets in the home stop working for several hours until the flood water recedes. Potter alleges that during a particularly severe flood in January 2007, flood

water came over the foundation and into the house itself, resulting in a half-inch of standing water on the floors of the home.

Podder filed suit against Funding Partners, raising a number of claims related to the flooding problems. Podder subsequently entered into a Rule 11 agreement, limiting his claims to breach of the implied warranty of habitability and a corresponding claim under section 17.50 of the Texas Deceptive Trade Practices Act (DTPA). *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (West Supp. 2009) (allowing cause of action for breach of express or implied warranty).

Funding Partners filed a motion for summary judgment on the issue of liability, arguing that the implied warranty of habitability did not apply to its sale of the home to Podder because Funding Partners was not the builder of the home. The summary-judgment evidence reflects that construction on the house began in 1996, when previous owners Magdaleno and Carmen Reyes designed and began construction of the home themselves.[1] According to Carmen Reyes's deposition testimony, she and her husband laid the foundation for the home, did the framing, ran the electrical wiring, had plumbing installed, did the roofing, and installed windows, exterior doors, drywall, rafters, and shingles. However, Magdaleno Reyes became ill before construction was completed, and the Reyeses were unable to finish the interior of the home. Instead, they entered into an agreement to sell the home to Jacque Lewis and Dwight Walters.

In order to obtain the funds to purchase the property, Lewis and Walters entered into an agreement with Funding Partners. According to Funding Partners, it is in the business of loaning

---

[1] At the time construction began, the property was owned by the parents of Carmen Reyes. Reyes originally purchased the lot herself in February 1994, but transferred the property to her parents in December 1994, who then transferred it back to her in May 2001.

money to investors for the purchase and repair, if necessary, of houses. In a typical transaction, Funding Partners loans funds to an investor for use in purchasing a house. The investor then assigns the real-estate contract over to Funding Partners, which takes title in its own name. Simultaneous with the closing of a property from the seller, Funding Partners enters into a note and contract for deed with the investor. If the investor subsequently sells the property, Funding Partners transfers the property back to the investor on the closing date with the third-party buyer. If the investor fails to sell the property, Funding Partners cancels the contract for deed and then sells the property in its own name.

The latter scenario played out in the agreement with Lewis and Walters. After completing some work on the property, including replacing the roof and installing flooring, Lewis and Walters abandoned the property and defaulted on the loan from Funding Partners. Funding Partners then canceled the contract for deed and hired third-party contractors to perform the necessary work left to complete the house, including the installation of cabinets, interior doors, and a septic system. On February 4, 2004, Funding Partners sold the property to Podder. It is undisputed that Podder was the first owner to actually reside in the home.

The trial court granted summary judgment in favor of Funding Partners on the issue of liability, dismissing Podder's claims for breach of the implied warranty of habitability. Funding Partners then filed a motion for final summary judgment seeking attorney's fees under the real-estate sales contract, which provides that the "prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred

3

by the prevailing party." The trial court granted this motion as well, awarding Funding Partners $41,040 in attorney's fees. This appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a motion for summary judgment, the movant must show that there is no issue of material fact and that it is entitled to judgment as a matter of law. *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

## DISCUSSION

*Implied Warranty of Habitability*

In his first issue on appeal, Podder argues that the trial court erred in granting summary judgment on the issue of liability because the implied warranty of habitability applied to his purchase of the home from Funding Partners. According to Podder, the issue is not whether Funding Partners is in the business of home construction, but whether he was the first purchaser to reside in the newly constructed home. Funding Partners, on the other hand, argues that the warranty of habitability is inapplicable here because Funding Partners did not actually build the home.

The Texas Supreme Court adopted the implied warranty of habitability in *Humber v. Morton*, stating that where "it is undisputed that [the appellee] built the house and then sold it as a new house," he thereby impliedly warranted that the house "was suitable for human

4

habitation." 426 S.W.2d 554, 555 (Tex. 1968). In reaching its conclusion, the court noted that the appellee "was in the business of building or assembling houses." *Id.* The court justified its rejection of the rule of caveat emptor in this context by observing that "[t]o apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice." *Id.* at 561 (quoting *Bethlahmy v. Bechtel*, 415 P.2d 698, 710 (Idaho 1966)). The supreme court has since described the warranty of habitability as requiring "the builder to provide a house that is safe, sanitary, and otherwise fit for human habitation." *Centex Homes v. Buecher*, 95 S.W.3d 266, 273 (Tex. 2002).[2]

   In describing the policy reasons for the implied warranty of habitability, the Texas Supreme Court emphasized that:

> (1) a builder should be in business to construct buildings free of latent defects; (2) the buyer cannot, by reasonable inspection or examination, discern such defects; (3) the buyer cannot normally rely on his own judgment in such matters; (4) in view of the circumstances and the relations of the parties, the buyer is deemed to have relied on the builder; and (5) the builder is the only one who has or could have had knowledge of the manner in which the building was built.

*Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983), *overruled on other grounds by Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649-50 (Tex. 1996). Many of these policy reasons for the implied warranty of habitability are clearly inapplicable to the transaction between Podder and Funding Partners. Funding Partners is not in business to construct buildings, and

---

[2] The warranty of habitability has been incorporated into the property code. *See* Tex. Prop. Code Ann. § 430.002 (West 2008) ("The construction of each new home or home improvement shall include the warranty of habitability.").

therefore has no obligation to construct buildings free of defects. There is no indication that Funding Partners, a finance company with no particular expertise in home construction, was in any better position than Podder to discern latent construction defects by reasonable inspection or examination. Finally, Funding Partners does not occupy a special position as the sole party with knowledge of the manner in which the home was built.

In support of his argument that the warranty of habitability is not limited to transactions in which the seller is in the business of building houses, Podder relies on the following language from *Diana v. Parks*, 433 S.W.2d 761, 762-63 (Tex. Civ. App.—Texarkana 1968, no writ): "As first seller of a newly constructed house, defendant M.R. Parks, appellee here, impliedly warranted that the house was constructed in a good and workmanlike manner and was suitable for human habitation." Podder contends that because Funding Partners was the first seller of the finished home in this case, the warranty of habitability applies. *Diana*, however, does not support this proposition, as the opinion suggests that the appellee was not only the first seller of the home, but the builder as well. *See id.* at 764. In discussing whether the seller breached the contract, the court observed that the seller was contractually obligated to treat the house for termites, and that the record "does not show a breach in this respect; it does not show that the *builder* did not have the house treated before relinquishing possession or that he did not furnish [the buyer] a certificate as contracted." *Id.* (emphasis added). Thus, *Diana* does not support Podder's argument that the implied warranty of habitability always applies to the first sale of a completed home, even if the seller did not build the home.

Other courts of appeals have held that the implied warranty of habitability applies only to the sale of a home by the builder. *See Wiggins v. Overstreet*, 962 S.W.2d 198, 203 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *March v. Thiery*, 729 S.W.2d 889, 892 (Tex. App.—Corpus Christi 1987, no writ). In *Wiggins*, the seller, who had lived in the townhome in question before selling it, was the son of the builder. 962 S.W.2d at 199. The court of appeals affirmed the trial court's grant of summary judgment on the ground that the seller "was not a proper party because he did not build the townhome." *Id.* The court observed that the seller "was not the proper party to be sued because he was not the builder/contractor subject to implied warranties of good workmanship and habitability." *Id.* at 203.

We recognize that the present case can be distinguished from *Wiggins* on the basis that the appellant in *Wiggins* was not the first occupant of the home. *See id.* ("The sale of a *used house* by a nonbuilder owner does not imply warranty of habitability on the part of the nonbuilder owner.") (emphasis added). We find this distinction to be insignificant. In *March*, the court of appeals held that it is the identity of the builder/vendor, rather than the identity of the home's first resident, that dictates whether the warranty of habitability applies. 729 S.W.2d at 892. In holding that a builder/vendor who occupied the home before selling it remained subject to the implied warranty of habitability, the court stated that the "same result is reached whether we consider appellants to be the first purchasers or whether appellees are viewed as the first purchasers. In either case, the *builder/vendor* impliedly warrants that the house was constructed in a good workmanlike manner and fit for human habitation." *Id.* (emphasis in original).

7

While Podder argues that Funding Partners "partially built" the home by finishing the interior, it is undisputed that the grading, foundation, exterior work, and plumbing were completed by Magdaleno and Carmen Reyes. To the extent any of the work actually paid for by Funding Partners could have contributed to the flooding problems, the summary-judgment evidence reflects that Funding Partners hired third-party contractors to complete this work. Where a nonbuilder owner hires a third party to repair or modify an existing home, any implied warranty affecting those repairs or modifications applies to the entity that actually performed the remodeling. *See Bynum v. Prudential Residential Servs.*, 129 S.W.3d 781, 794 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that where nonbuilder sellers had significant remodeling done before selling home, (1) sellers made no implied warranty of habitability because they did not build home, and (2) sellers made no implied warranty that repairs and modifications were done in good and workmanlike manner because third-party contractor, as opposed to sellers, actually did remodeling).

In light of *Wiggins*, *March*, *Bynum*, and the policy reasons behind the implied warranty of habitability, we hold that the warranty does not apply to the transaction at issue here, in which Podder purchased the home from a seller who did not build the home and is not in the business of building houses. *See Wiggins*, 962 S.W.2d at 203; *March*, 729 S.W.2d at 892; *see also Gupta*, 646 S.W.2d at 169. Podder's first issue is overruled.

*Attorney's Fees*

In his second issue on appeal, Podder argues that the trial court erred in awarding Funding Partners attorney's fees under the residential sales contract. As previously stated, the real-estate sales contract between Podder and Funding Partners provides that the "prevailing party in any

legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party." According to Podder, his suit is not "related to" the sales contract because it is limited to common-law warranty and statutory warranty causes of action, as opposed to a claim for breach of contract.[3]

We do not read the language of the contractual provision authorizing attorney's fees to limit the recovery of fees to claims of breach of contract. Rather, the language broadly refers to all suits "related to this contract." In Podder's live pleading, he alleged that Funding Partners "breached the implied warranty of habitability when they contracted for and sold the Property to the plaintiff." Furthermore, Podder's claims are based on his contention that Funding Partners breached a warranty of habitability that was implied in the real-estate sales contract. *See Gupta*, 646 S.W.2d at 169 (holding that implied warranty is "implicit in the contract between the builder/vendor and original purchaser"). Finally, we have previously held that claims based in tort and statutory causes of action, including the DTPA, can be considered "related to" a sales contract for purposes of awarding attorney's fees under a contract provision identical to the one in the present case. *See Sierra Assoc. Group, Inc. v. Hardeman*, No. 03-08-00324-CV, 2009 Tex. App. LEXIS 1181, at *24 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.). As a result, we find Podder's claims to be sufficiently related to the contract to support the award of attorney's fees to Funding Partners. Podder's second issue is overruled.

---

[3] Podder also argues that Funding Partners was not entitled to attorney's fees because he should have been the prevailing party in his suit. In light of our conclusion that the trial court properly granted summary judgment in favor of Funding Partners on the issue of liability, we need not reach this issue.

9

## CONCLUSION

Having found no error in the trial court's orders granting summary judgment in favor of Funding Partners on the issues of liability and attorney's fees under the contract, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   March 12, 2010

10